### NIAGARA SHARE CORPORATION OF MARYLAND v. FRIED et al.

No. 448.

Circuit Court of Appeals, Second Circuit.

Sept. 12, 1932.

MANTON, Circuit Judge, dissenting.

Curtin & Glynn, of New York City (John J. Curtin and Wesley S. Sawyer, both of New York City, of counsel), for appellant Fried.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., and Porter R. Chandler, of New York City (Lyman M. Bass and Fritz Fernow, both of Buffalo, N. Y., of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The question raised by this appeal is whether the complainant, Niagara Share Corporation of Maryland, transferee of all the assets of Niagara Share Corporation of Delaware, can enforce a contract made by the defendants with the latter corporation that certain specified securities purchased by it from Lincoln Interstate Holding Company should realize at least the sum of $1,074,000.

The contract of indemnity which the defendants made with the Delaware company warranted that, "if the sums realized" by that company "upon the sale" should not equal $1,074,000, the defendants would on demand, "after the sale or other disposition of the last of said guaranteed assets to be sold or disposed of," pay to the Delaware company the difference.

The appellant argues that the guaranteed assets disposed of after the transfer to the Maryland company had been valued on the books of the Delaware company and afterwards on the books of the Maryland company at a sufficient amount to equal that covered by the contract of indemnity, that they were transferred to the Maryland company for shares of its stock issued against correspond-ing values, and that there was accordingly a sale of the assets for corporate stock, and there could therefore be nothing to which the contract of indemnity would apply.

The difficulty with this argument is that the contract of indemnity contemplated more than a mere issue of stock against the guaranteed assets and related to sales for cash, or on credit, or by way of exchange. It speaks of "sums realized" (fol. 69), of "a sale or other disposition" (fol. 70), and concludes with an unusual clause which provides that the "promises" of the "guarantors * * * shall run to and inure to the benefit of" the Delaware company "and its successors and the assignee or assignees of all or substantially all its assets." Such a clause would be unnecessary in order to transfer amounts owing to the Delaware company under the agreement of indemnity. If "inure to the benefit of * * * its successors and the assignee * * * of all or substantially all its assets" meant no more than that the Delaware company might transfer any claim which it had under the agreement, the words were superfluous and useless. Defendants' counsel evidently realize this, and accordingly seek to give them some effect, but still to limit them to cases where the Delaware company should incorporate a new company to take over its assets, as was done in Halsted v. Globe Indemnity Co., 258 N. Y. 176, 179 N. E. 376, or where there should be a readjustment of stock interests that did not involve a transfer of assets by the Delaware company to an existing corporation, in exchange for an issue of the latter's stock.

It seems unlikely that the clause should on its face provide that the promises of the indemnitors should "inure to the benefit of" an assignee of substantially all the assets, if such limitations were intended. It is much easier to suppose that an assignee was to succeed to the rights of the Delaware company, except in cases where a sale for cash or on credit, or other like disposition of the guaranteed assets had been made, than it is to suppose that the assignment clause was to have no practical effect. If the obligations of the indemnitors were to "inure to the benefit of" an assignee, the latter must have had the right to perform the conditions which might result in liability. Such an interpretation harmonizes with the words "sums realized" in the contract of indemnity, already referred to. The transaction here closely resembled a consolidation or merger where rights and obligations otherwise unassignable pass under the statute to a successor corporation. New York Stock Corporation Law

744

(Consol. Laws, c. 59), §§ 85 and 89; Matter of Bergdorf, 206 N. Y. 309, 99 N. E. 714.

The presence of Seely as Fried's representative at meetings of the board of directors of the Commercial Funding Corporation, as well as the practice of submitting to the defendants all offers to purchase its assets, indicated that the defendants regarded themselves as personally interested in the liquidation of its assets. Such conduct is hard to explain except upon the theory that all parties were treating the contract of indemnity as still effective after the transfer by the Delaware to the Maryland company.

Some difficulty exists as to the status of the 4,401 shares of stock of Lawyers' Title Guaranty Company transferred by the Delaware company to the Niagara Share Corporation of New York in exchange for its stock issued at $3 per share. But this again was nothing but a stock transaction and not a cash realization. The defendants consented to a substitution of stock of the National Commercial & Title Company for the Lawyers' Title Guaranty shares without a murmur, and evidently upon the theory that their agreement of indemnity was not then extinguished. It is true that the New York company was not a transferee of substantially all of the assets of the Delaware or the Maryland company. Yet, as a wholly owned subsidiary, it came within the term "successor" in the clause quoted and within the spirit of the provision which was intended to keep alive the contract of indemnity until there was a realization of the guaranteed assets. A mere exchange of this guaranteed asset for stock of the subsidiary was neither a "sale" nor "other disposition" within the meaning of the contract of indemnity.

The contention of defendants' counsel that the transfers of the guaranteed assets to the Maryland company and to the New York subsidiary were in effect realizations for cash or exchanges of property, and not steps in what amounted to a reorganization, is based largely on the fact that the stock issued in exchange was issued upon a valuation of the assets. In the case of the transfer of the assets to the Maryland company, they had to be valued in order to close the books of the Delaware company (fols. 755, 756). They also had to be valued in order to adjust the rights of the other stockholders of the Maryland company. So far as the Delaware company was concerned, it received nothing, for the stock of the Maryland company issued for the assets transferred, passed directly to the Delaware's stockholders and not to it, and that company was dissolved and passed out of the picture. In the case of the assets transferred to the New York subsidiary company, some valuation was necessary as a basis for the stock issued against them. In each transaction, the transfer, whether technically a sale or not, was not the kind of disposition which the indemnity agreement contemplated for determining the balance due.

It is argued that the contract of indemnity lodged a discretion in the Delaware company which could not be delegated and that a liquidation of the guaranteed assets by it rather than by a successor was a condition of indemnity. But this argument gives no sufficient weight to the assignment clause already discussed, the terms of which seem to control the case. Assets Realization Co. v. Roth, 226 N. Y. 370, 123 N. E. 743. In Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246, and New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 73 N. E. 48, the consideration of no such provisions as the contract of indemnity here contains was involved. The contention that the sale at auction was not proper or properly conducted is unfounded. The evidence established that the Commercial Funding Corporation was hard pressed, and no other method of realizing upon the precarious assets made up of its stock and notes seems to have been available. The defendants were given notice of the date of the auction long before it was held, and all the proceedings were those customary in such cases.

We have examined the other points raised by the appellant as to alleged errors in the admission and exclusion of evidence and the alleged failure of the complainant to account for the conduct of the business of the Commercial Funding Corporation, and can discover nothing prejudicial to the defendants' rights.

The decree is affirmed, with costs.

MANTON, Circuit Judge, dissents, without opinion.