NIAGARA SHARE CORPORATION OF MARYLAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70813.   Promulgated December 5, 1934.

*Ralph M. Andrews, Esq.*, and *A. E. Surdam, Esq.*, for the petitioner.

*Elden McFarland, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner has brought this proceeding for the purpose of redetermining the income tax liability of itself and its affiliated companies for 1930. The respondent has determined a deficiency against petitioner for that year of $15,947.43. In its petition the petitioner set forth four allegations of error as the basis for its appeal, but at the hearing waived all but one error, namely, the failure of respondent to allow a deduction of $339,869.11 as the full amount of a loss sustained on the sale of stock and notes of the Commercial Funding Corporation.

According to the stipulated facts, which are incorporated herein by reference, the alleged loss grew out of the following circumstances. The Niagara Share Corporation of Maryland, the petitioner herein, was incorporated June 18, 1929, under the laws of the State of Maryland, and has its principal place of business and office at Baltimore, Maryland.

During 1929 Niagara Share Corporation of Delaware, hereinafter referred to as Niagara of Delaware, was a corporation organized under the laws of the State of Delaware, having its office and principal place of business at Wilmington, Delaware.

On July 24, 1929, Niagara of Delaware entered into two written contracts. The first of these was with the Lincoln Interstate Holding Co., a New Jersey corporation, and therein it was agreed that Niagara of Delaware was to acquire the Lincoln Co.'s assets. The consideration therefor was 45,000 shares of common stock of Niagara of Delaware and the assumption of certain of Lincoln's obligations by Niagara of Delaware.

The second contract of July 24, 1929, was between Niagara of Delaware and three individuals, namely, Joseph C. Braelow, Harry L. Tepper, and Albert Fried, hereinafter called the guarantors, as they are designated in the contract. This contract in the preamble is described as " an instrument of guaranty." It recites that the guarantors are stockholders in the Lincoln Co., and have requested Niagara of Delaware to enter into the agreement for the acquisition of Lincoln's assets; that they have represented to Niagara of Delaware that it will realize $1,074,000 from certain of Lincoln's assets. These assets, hereinafter called the guaranteed assets, included demand notes of Commercial Funding Corporation, a New Jersey corporation, in the principal amount of $380,000, and all of the outstanding stock of the same corporation consisting of 7,000 shares of common stock of no par value, and 1,387 shares of 8 percent preferred stock of the par value of $100 per share. The agreement further provided that if the sums realized by Niagara of Delaware upon the sale of the guaranteed assets did not equal $1,074,000 (including dividends, interest, and rights received from the assets) then upon the sale of the last of those assets the guarantors would pay to Niagara of Delaware an amount equal to the difference between $1,074,000 and the aggregate amount realized from the guaranteed assets. The liability of the guarantors under this contract was limited to $400,000. As partial security for performance the guarantors pledged corporate stocks of a value of $200,000, and authorized their deposit with a trust company. The promises of the guarantors were by the terms of the contract to inure to the benefit of Niagara of Delaware " and its successors, and the assignee or assignees of all or substantially all of its assets."

Pursuant to the first contract mentioned of July 24, 1929, the Lincoln Co. duly assigned to Niagara of Delaware its assets, including the stock and notes of Commercial Funding Corporation.

On December 20, 1929, Niagara of Delaware entered into a written contract with petitioner under which petitioner acquired all

the property and assets of Niagara of Delaware as of the close of business on December 31, 1929, in consideration of the assumption by petitioner of the liabilities of Niagara of Delaware and the issuance to stockholders of Niagara of Delaware of one share of petitioner's preferred stock for each share of preferred stock of Niagara of Delaware, and one and one-half shares of petitioner's common stock for each share of common stock of Niagara of Delaware. The transfer of assets from Niagara of Delaware to petitioner was made by bill of sale dated January 10, 1930. Included in the assets transferred were the demand notes and stock of the Commercial Funding Corporation above referred to.

The property and assets acquired from Niagara of Delaware were recorded on petitioner's books and records at the fair market value thereof on December 31, 1929. The common and preferred stock of the Commercial Funding Corporation had a fair market value on December 31, 1929, of $38,602.48. The 14 demand notes of the Commercial Funding Corporation, aggregating $380,000, had a fair market value on December 31, 1929, of $380,000, and were included in the item of " notes receivable " of $417,500 from the Commercial Funding Corporation entered on petitioner's books of account. The excess of $37,500 of these notes represents advances to the Commercial Funding Corporation by Niagara of Delaware prior to December 31, 1929.

On various dates prior to October 10, 1930, all of the guaranteed assets except the Commercial Funding Corporation stock and notes were sold for $652,806.66. The stock and notes of the Commercial Funding Corporation were the last of the guaranteed assets to be sold, and these were sold by petitioner on October 16, 1930, at public auction for $99,000.

In recording this sale petitioner placed on its books an amount of $322,193.34, representing its claim against the guarantors. At the time of the sale the Commercial Funding Corporation stock and notes were carried on petitioner's books at $438,869.11, consisting of notes, $380,000, accrued interest, $20,266.63, and preferred and common stock, $38,602.48. The sale of these assets on October 16 reduced the balance in the account to $339,869.11, of which $322,-193.34 represented the claim against the three guarantors and $17,-675.77 was set up as a loss on the sale of the stock and notes. The amount of $322,193.34 represents the difference between $751,806.66, being the aggregate amount realized from the sale of all the guaranteed assets, and $1,074,000, the amount which the guarantors represented would be realized.

On October 22, 1930, petitioner served notice on the guarantors that the sale of the guaranteed assets had brought an aggregate of

$751,806.66, and demanded payment under the guaranty contract of $322,193.34. Payment of any amount pursuant to the demand was formally refused by the guarantors on November 3, 1930.

On November 10, 1930, petitioner instituted an action against the guarantors in the District Court for the Southern District of New York, for the recovery of the $322,193.34, with interest. The cause was referred to and heard by a special master on various dates between August 5, 1931, and January 5, 1932, the testimony being concluded on the latter date.

The action was defended on the following grounds: First, that the contract of July 24, 1929, was a contract personal to Niagara of Delaware, which placed credit, trust, and confidence in Niagara of Delaware, hence was not assignable, and defendants were not liable to the assignee, the petitioner herein, in any amount; second, that the sale of assets by Niagara of Delaware to petitioner was a sale of the guaranteed Commercial Funding assets within the meaning of the contract of guaranty; and, third, that the Commercial Funding Corporation's stock and notes were improperly sold on October 16, 1930, and the auction on that date improperly conducted.

The special master filed his decision and report on January 15, 1932, finding against the guarantors and for the petitioner on all three issues. On February 3, 1932, the report of the special master was formally approved and confirmed by decree of the District Court, and on September 12, 1932, this decree was in all respects affirmed on appeal by the Circuit Court of Appeals for the Second Circuit, *Niagara Share Corporation of Maryland* v. *Fried*, 61 Fed. (2d) 740.

Up to and including March 31, 1934, the petitioner has been able to collect on the judgment against the guarantors the sum of $96,-412.40. On November 10, 1930, the defendant Fried was financially able to pay an amount of $322,193.34.

Petitioner kept its books and accounts and filed its tax returns on the accrual basis and for the calendar year.

On its 1930 consolidated return petitioner deducted $17,675.77 as a loss on the sale of Commercial Funding Corporation assets. Also on its consolidated return petitioner claimed an operating loss for the period of affiliation in 1930 of the Commercial Funding Corporation of $45,624.85, plus an operating loss of the Dalco Co. of $2,305.81, less an operating profit of the Empire Brokerage Co. of $1,377.77, or a consolidated net loss of $46,552.89. This figure was reduced by $4,000 dividends received by the Commercial Funding Corporation, which owned all the outstanding stock of the Empire Brokerage Co. and Dalco Co., making a consolidated net loss for these three com-

panies of $42,552.89. The respondent disallowed the deduction of $42,552.89 with the following explanation:

To adjust loss sustained from sale of stock of Commercial Funding Corporation during consolidated period in 1930 in accordance with the provisions of article 34(c)(2) of Regulations 75.

Neither party disputes the figure at which the Commercial Funding Corporation stock and notes were carried on petitioner's books as representing the proper basis for determining gain or loss.

The basis of the stock and notes for gain or loss purposes being $438,869.11, and petitioner having sold them in 1930 for $99,000, it now claims that not only did respondent err in disallowing the loss of $17,675.77 claimed in the return, but that there should be allowed as a loss $339,869.11, this being the difference between the basis of $438,869.11 and the amount realized, $99,000.

Section 23 (f) of the Revenue Act of 1928 provides for the deduction of losses by corporations as follows: " In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

General rules applied in loss cases are that " the income tax law is concerned only with realized losses ", *Lucas* v. *American Code Co.*, 280 U. S. 445, and claimed losses must " usually be evidenced by closed and completed transactions." *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398; art. 171, Regulations 74. In *Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243, it is said:

The statute was intended to apply not only to losses resulting from the physical destruction of articles of value but to those occurring in the operations of trade and business, where the business man has ventured on a course of action in the reasonable expectation that the promised conduct of another will come to pass. Not only the future success of the business but its present solvency depends on the probable accuracy of his prophecy. Only when events prove the prophecy to have been false can it be said that he had suffered.

In the case before us, the sale of the Commercial Funding Corporation securities no doubt was a completed transaction in so far as those securities themselves are concerned. But they cannot be considered alone, for along with them petitioner acquired other property, namely, the guaranty of the three individuals. And this must be taken into consideration to determine whether there was a " realized loss " and if so whether it was " compensated for by insurance or otherwise." The destruction of property by fire unquestionably brings about a loss of that particular property, but does not necessarily give the owner a deductible loss; the amount of insurance is taken into consideration and the deductible loss determined by comparing the basis with the amount of insurance. It is even possible to realize a taxable gain if the insurance exceeds the basis for gain or

loss. In cases involving losses offset by insurance or other claims for compensation, we have held that no deduction is allowable in the year of the loss of the property, but is allowable for the year when the claim for compensation is settled. *Allied Furriers Corporation,* 24 B. T. A. 457. This is in line with the holding in *Lewellyn* v. *Electric Reduction Co., supra,* that where one relies on the promised conduct of another it is only when events occur proving the reliance to have been misplaced that it can be said he has suffered. Similarly in the *American Code Co.* case, *supra,* loss was denied in the year of breach of contract where the amount to be paid "depended in large part on the course of future events." In *John Thatcher & Sons,* 30 B. T. A. 510, we reviewed at length the cases dealing with claimed losses where the taxpayer had a claim over against others which was not settled until later years. In that case the taxpayer was a contractor, who, upon default of its subcontractors, was obliged to construct buildings under its contracts. The cost of construction, started in 1917 and completed in 1919, was in excess of the price received for completing the work. The taxpayer thereupon sought to recover the excess from the surety company that had bonded the subcontractors. The ensuing litigation was terminated in 1928 by decision adverse to the taxpayer. In deciding the case we overruled the contention of the Commissioner that the loss had been sustained between 1917 and 1919, pointing out that at that time "there was merely the possibility of a loss" in view of the taxpayer's right of action against the subcontractors and their surety. We sustained the taxpayer's claim to a loss deduction for 1928, saying that upon settlement of the litigation in that year "the possibility of loss became a reality."

The above cases point the way to the solution of the question presented here. The petitioner sold its securities for an amount less than their basis, but it had in hand at the time a written contract upon which reliance was placed to indemnify it against loss and its claims under the contract were sustained by the courts. The validity of petitioner's claim being judically established and the guarantors being financially able to respond to the full amount of the claim in 1930, it cannot be said that the claim was worth any less than the full amount which petitioner sought to recover on it. Whether inability to collect on the judgment gives rise to a loss in later years is not before us for decision. Here, as in *Lewellyn* v. *Electric Reduction Co., supra,* there is nothing to indicate that in the taxable year the taxpayer "had ceased to regard his rights under the contract as having value or that there was then reasonable ground to suppose that efforts to enforce them would be fruitless."

There is a valid distinction between the cases holding as above set out and those cited by petitioner, including *H. P. Robertson Co.*, 14 B. T. A. 887, *Gottlieb Realty Co.*, 28 B. T. A. 418, and *United States* v. *White Dental Manufacturing Co.*, *supra*. This is aptly pointed out in the *Gottlieb Realty* case, where we said: " The mere possibility or the bare hope of a future development permitting recovery does not bar the deduction of a loss clearly sustained."

Such was the situation in the *White Dental* case where, as the Court said, what would ultimately be recovered would not be " as a matter of right, but as a matter of grace to the vanquished or exaction by the victor." A claim as tenuous as that is not to be seriously considered in the practical matter of determining income.

We accordingly hold that to the extent of petitioner's claim against the guarantors it sustained no deductible loss on the sale of Commercial Funding Corporation securities in 1930. That claim amounted to $322,193.34, while the amount of $99,000 realized was $339,869.11 less than the basis of the securities. Consequently if no further adjustment need be made petitioner sustained a loss, not compensated for by insurance or otherwise, in the amount of $17,675.77 ($339,-869.11 − $322,193.34). This is the amount petitioner claimed in its return.

In the year 1930, from January 1 to the time affiliation was broken by the sale of the Commercial Funding Corporation stock, that corporation and its subsidiaries sustained a net operating loss of $42,552.89. While, as stated above, deduction of $42,552.89 was disallowed, the explanation given in connection therewith would indicate that it was not a disallowance of the operating loss as such, but effected an adjustment of basis of the stock. However this may be, the operating loss of $42,552.89 was clearly an allowable deduction in computing consolidated net income, and if it has not been allowed it should be. In accordance with article 34 (c) (2), Regulations 75, this operating loss must be used to adjust the basis for gain or loss on the sale of the stock. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. So applying the operating loss against the basis of $38,602.48 leaves the petitioner with a basis of zero for the stock. The loss on the sale of the Commercial Funding Corporation stock and notes computed on this adjusted basis amounts to less than the guaranty of $322,193.34, and in view of what we have already said petitioner has not suffered a loss that is deductible in 1930.

*Decision will be entered under Rule 50.*