## NIAGARA SHARE CORPORATION OF MARYLAND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3960.

Circuit Court of Appeals, Fourth Circuit.

Feb. 22, 1936.

Ralph M. Andrews, of Buffalo, N. Y. (John L. Kenefick, of Buffalo, N. Y., on the brief), for petitioner.

Berryman Green, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This a petition to review a decision of the United States Board of Tax Appeals, involving petitioner's income tax for the year 1930, in the amount of $13,436.22. The opinion of the board is reported in 31 B.T.A. 832.

Upon petition for redetermination of the income tax liability of the petitioner, the board fixed the liability at the sum above stated. After the decision of the Circuit Court of Appeals for the Second Circuit in the case of Commissioner v. John Thatcher & Son, 76 F.(2d) 900, the petitioner filed a motion before the board for rehearing, which motion the board denied, thereupon this petition was filed.

The pertinent facts, as found by the board, are as follows:

The petitioner is a Maryland corporation chartered under the laws of that state on June 18, 1929, and has its principal place of business in the city of Baltimore.

During the year 1929 Niagara Share Corporation of Delaware, hereinafter referred to as Niagara of Delaware, was a corporation organized under the laws of the state of Delaware, having its principal place of business at Wilmington, Del.

On July 24, 1929, Niagara of Delaware entered into two written contracts. The first of these was with the Lincoln Inter-state Holding Company, a New Jersey corporation, whereby Niagara of Delaware was to acquire the Lincoln Company's assets in consideration of 45,000 shares of its common stock and the assumption of certain of the Lincoln Company's obligations.

The second contract was between Niagara of Delaware and three individuals, Joseph C. Braelow, Harry L. Tepper, and Albert Fried, hereinafter called the guarantors, as designated in the contract which is styled as "This Instrument of Guaranty." This contract recites that the guarantors are stockholders in the Lincoln Company, and have requested Niagara of Delaware to enter into the first contract of July 24, 1929; that they have represented to Niagara of Delaware that it will receive $1,074,000 from certain assets. These assets, hereinafter called the guaranteed assets, included demand notes of Commercial Funding Corporation in the principal amount of $380,000, and all of the outstanding stock of the same corporation. The contract further provided that if the sums realized by Niagara of Delaware upon the sale of the guaranteed assets did not equal $1,074,000 (including dividends, interest, and rights received from the assets), then upon the sale of the last of those assets the guarantors would pay to Niagara of Delaware an amount equal to the difference between $1,074,000 and the aggregate amount realized from the guaranteed assets. The liability of the guarantors under this contract was limited to $400,000. The guarantors, as partial security for their performance, pledged certain stock of a value of $200,000, and authorized its deposit with a trust company. The promises of the guarantors were, by the terms of the contract, to inure to the benefit of Niagara of Delaware "and its successors, and the assignee or assignees of all or substantially all of its assets."

The assets of the Lincoln Company were duly assigned to Niagara of Delaware.

On December 20, 1929, Niagara of Delaware entered into a written contract with the petitioner under which the petitioner acquired all of the assets of Niagara of Delaware as of December 31, 1929, in consideration of petitioner's assumption of the liabilities of Niagara of Delaware and the issuance to the stockholders of Niagara of Delaware of certain of petitioner's preferred stock. The assets of Niagara of Delaware were transferred to the petition-

er by bill of sale dated January 10, 1930. Included in the assets so transferred were the demand notes and stock of the Commercial Funding Corporation above referred to.

The property and assets acquired from Niagara of Delaware were recorded on petitioner's books and records at the fair market value thereof on December 31, 1929. The common and preferred stock of the Commercial Funding Corporation had a fair market value on December 31, 1929, of $38,602.48. The demand notes of the Commercial Funding Corporation, aggregating $380,000, had a fair market value on December 31, 1929, of $380,000, and were included in the item of "notes receivable" of $417,500 from the Commercial Funding Corporation entered on petitioner's books of account. The excess of $37,500 of these notes represents advances to the Commercial Funding Corporation by Niagara of Delaware prior to December 31, 1929.

On various dates prior to October 10, 1930, all of the guaranteed assets except the Commercial Funding Corporation stock and notes were sold for $652,806.66. The stock and notes of the Commercial Funding Corporation, the last of the guaranteed assets, were sold by the petitioner on October 16, 1930, for $99,000.

In recording this sale, petitioner placed on its books an amount of $322,193.34, representing its claim against the guarantors. This amount of $322,193.34 represented the difference between $751,806.66, the aggregate amount realized from the sale of all the guaranteed assets, and $1,074,000, the amount which the guarantors represented would be realized.

On October 22, 1930, petitioner notified Joseph C. Braelow, Harry L. Tepper, and Albert Fried, the guarantors, that the sale of the guaranteed assets had brought an aggregate of $751,806.66, and demanded payment under the guaranty contract of $322,193.34. On November 3, 1930, the guarantors denied liability to the petitioner under the contract, and in November, 1930, the petitioner instituted an action against the guarantors in the District Court of the United States for the Southern District of New York, for the recovery, under the guaranty contract, of $322,193.34, with interest.

After reference to a special master, a decree was entered in February, 1932, in favor of the petitioner. In September, 1932, this decree was in all respects affirmed, on appeal, by the Circuit Court of Appeals for the Second Circuit, Niagara Share Corporation of Maryland v. Fried, 61 F.(2d) 740.

Up to and including March 31, 1934, the petitioner had been able to collect on the judgment against the guarantors the sum of $96,412.40. (It was admitted in the oral argument before this court that nothing more could be collected by the taxpayer). On November 10, 1930, the guarantor, Fried, was financially able to pay an amount of $322,193.34.

Petitioner kept its books and accounts and filed its tax returns on the accrual basis and for the calendar year.

The Board of Tax Appeals held that the loss sustained by the petitioner on the sale of the guaranteed assets was allowable only to such extent as it exceeded the amount of the petitioner's claim under the guaranty contract against Joseph C. Braelow, Harry L. Tepper, and Albert Fried, on the ground that the petitioner's claim under the contract was compensation to the petitioner for its loss under section 23 (f) of the Revenue Act of 1928 (26 U.S.C.A. § 23 (f) and note).

The sole question presented is whether the taxpayer had a right to deduct in its return, for taxation, for the year 1930, an amount equal to the loss sustained through the sale of securities, in the sale of which it was guaranteed against loss, or whether the contract it held as assignee of Niagara of Delaware, with the three guarantors Braelow, Tepper, and Fried, under which the guarantors denied any liability to the petitioner, compensated it for the loss to such an extent that the loss could not be claimed until the amount recoverable on the guaranty contract could be definitely ascertained.

The statutes and regulations involved are:

Section 23 (f) of the Revenue Act of 1928:

"§ 23. *Deductions From Gross Income*.

"In computing net income there shall be allowed as deductions: * * *

"(f) *Losses by corporations*. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

Treasury Regulations 74, promulgated under the Revenue Act of 1928:

"Art. 171. *Losses*.— * * *

"Losses sustained by corporations during the taxable year and not compensated for by insurance or otherwise are deductible. * * *"

In considering the question here involved, we are confronted at the outset with the rule that under the Revenue Acts the annual period is the fairest method of computation. As we said in the case of Sitterding et al. v. Commissioner, 80 F. (2d) 939, 940, decided by this court January 6, 1936: "It is uniformly held that 'under the revenue acts taxable income is computed for annual periods.' That the revenue acts uniformly assess the tax on the basis of annual returns is unquestioned. Burnet v. Sanford & Brooks Company, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Burnet v. Thompson Oil & Gas Company, 283 U.S. 301, 51 S.Ct. 418, 75 L.Ed. 1049."

Here the taxpayer had admittedly suffered a loss in the year in question and had a contract assigned to it that guaranteed against this loss. The guarantors on the contract denied any liability. That the taxpayer would receive anything under the contract of guaranty was uncertain as is shown by the fact that what it did finally recover, an amount far less than its loss, was only recovered at the end of vigorously contested litigation and by the decision of a divided court. Niagara Share Corporation of Maryland v. Fried, supra. It certainly seems the fairer course to pursue to allow a taxpayer to deduct a loss in the year when suffered and to pay a tax on the amount of the loss recovered, if any, in the year in which the recovery is made. This was the holding of the Supreme Court in the case of Burnet v. Sanford & Brooks Company, 282 U.S. 359, 51 S.Ct. 150, 151, 75 L.Ed. 383, where the court said:

"All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt. * * *

"The excess of gross income over deductions did not any the less constitute net income for the taxable period because respondent, in an earlier period, suffered net losses in the conduct of its business which were in some measure attributable to expenditures made to produce the net income of the later period. * * *

"The Sixteenth Amendment was adopted to enable the government to raise revenue by taxation. It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. It is not suggested that there has ever been any general scheme for taxing income on any other basis. The computation of income annually as the net result of all transactions within the year was a familiar practice, and taxes upon income so arrived at were not unknown, before the Sixteenth Amendment."

In the Sanford & Brooks Case the taxpayer had suffered losses in an earlier period and the losses were recovered only after extended litigation. The taxpayer was required to pay taxes on the whole amount of the recovery in the year in which recovered. The taxpayer here could not compute with certainty the amount, if any, it would recover under the guaranty contract. As was said by the Supreme Court in United States v. S. S. White Dental Manufacturing Company, 274 U.S. 398, 47 S.Ct. 598, 600, 71 L.Ed. 1120, "The taxing act does not require the taxpayer to be an incorrigible optimist." To postpone the settlement of the question of the amount of the taxes that should be paid until the end of the litigation over the guaranty contract would result in unnecessary delay and render uncertain the amount of the taxpayer's liability. Such a course would result in endless confusion, not only in the accounts of taxpayers, but in the taxing department of the government.

The facts in the case of Commissioner v. John Thatcher & Son, supra, are similar to the facts here, except that the taxpayer in the Thatcher Case made no recovery under its indemnifying bonds and here the taxpayer made only a partial recovery. The principle that should govern both cases is the same and in the Thatcher Case the court held that the taxpayer was entitled to the deduction and that had the taxpayer succeeded in recovering such recovery would have been income in the year when recovered. Certainly if the guarantors in the contract involved here had sought to claim a loss under their contract as a deduction in their return for taxation in any year prior to the year in which, at the end

of litigation they were compelled to pay, it would not have been allowed as their liability was too contingent. This being true, it must follow that any recovery that might be made by the petitioner was too contingent to defeat the accrual of the loss to it in the year in which the loss occurred.

We are of the opinion that the question here is controlled by the decisions in the White Dental Company, Sanford & Brooks Company and John Thatcher & Son cases and we agree with the reasoning of the Circuit Court of Appeals for the Second Circuit in the Thatcher Case. An examination of the authorities relied upon by the respondent shows that they are easily distinguishable and that the facts are different from those here.

The decision of the Board of Tax Appeals is accordingly reversed.