## MORTON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4433.

Circuit Court of Appeals, Fourth Circuit.

June 12, 1939.

George D. Brabson, of Washington, D. C. (D. H. Blair and Blair & Korner, all of Washington, D. C., on the brief), for petitioner.

Newton K. Fox, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving income taxes of the petitioner in the sum of $1,057.71 for the fiscal year ending March 31, 1934. The decision of the Board is reported in 38 B. T. A. 534.

The facts, as to which there is little or no dispute, as found by the Board are as follows:

The taxpayer filed his income tax return on a fiscal year basis ending March 31, 1934, and for that year claimed a loss of $17,250 resulting from the foreclosure and sale of certain real estate, known as the Trentwood farm, in which he owned an undivided one-half interest.

In 1912, the taxpayer and the Atlantic Coast Realty Company jointly purchased the farm for $45,000 and made improvements thereon.

On March 12, 1923, they jointly borrowed $25,000 from the North Carolina Joint Stock Land Bank (hereinafter referred to as the Land Bank) on a note secured by a deed of trust on the property. The note provided for semi-annual payments of $875, to cover 6% interest on the loan and 1% payment on principal per annum.

In 1927, certain timber rights were sold for $7,500. This amount was paid to the Land Bank and under the conditions of the note was to be applied to the last instalments due under the amortization contract. Semi-annual instalments on the note were paid up until 1930. No payments of interest or principal were made thereafter, because of the taxpayer's financial condition and the bankruptcy of the Atlantic Coast Realty Company.

On December 2, 1931, pursuant to the request of the Land Bank, the property was advertised by the trustee under the deed of trust for sale at public auction on January 9, 1932.

The only persons present at the sale on January 9, 1932, were the taxpayer, his attorney and the attorney for the trustee. The latter conducted the sale and made bids for the Land Bank. After the taxpayer had bid $9,000, the attorney for the trustee bid $9,500, stating to the taxpayer that if taxpayer bid again he would get the property because $9,500 was as high as the attorney for the trustee was authorized to bid. Thereupon, taxpayer and his attorney bid no more.

During the month of January, 1932, the taxpayer brought suit in the Superior Court of Jones County, North Carolina, against the receivers of the First National Company, which company was the trustee under the deed of trust. The object of this suit was to enjoin the trustees from executing a deed of the property to the purchaser.

The court issued a temporary restraining order. Subsequently, upon the hearing on the rule to show cause, the court dissolved the preliminary restraining order on the ground that no irreparable damage

would be done, that recovery could be effected against the Land Bank for any damages that plaintiff had sustained. The court further held that current payments were in default because the mortgage note contained a provision that the proceeds of timber sales be applied to the last instalments due on the note and not to those currently due.

Pursuant to the court's disposition of the temporary restraining order a deed of the property was executed by the trustees to the Land Bank on March 3, 1932.

On March 29, 1932, the Land Bank brought suit against taxpayer and his wife in the Superior Court of Durham County, North Carolina, for the amount of the deficiency of $11,143.38 due on the note. The summons in that suit was served on the defendants on April 2, 1932.

On April 27, 1932, taxpayer and his wife filed their answer which admitted the borrowing, the execution of the note and the purported sale but denied the indebtedness, the correctness of the trustee's account, and that the sale was held according to law or according to the terms of the trust deed. As a further answer to the complaint, the defendant alleged his understanding that the proceeds of the timber sales were to be applied on the instalments next due, and that if that had been done there was no default; and finally that the purported sale of the land under the power contained in the trust deed was void, and a fraud upon the rights of the defendant.

The defendants prayed that the action be dismissed as to each of them; that the purported sale of the lands by the receivers be declared null and void; that they each be allowed to go without day; and that they be allowed to recover their costs.

Thereafter, both suits lay dormant for some time because of the congestion of court dockets.

The Board found as a fact that the taxpayer's attorney did not believe that any further cause of action remained in the suit filed by the taxpayer against the receivers in Jones County after the deed was executed by the trustees, but he considered that the taxpayer had the right to recover the land on the ground that the sale was voidable since the same person cried the sale for the trustees and bought the land as agent for the Land Bank. He so advised the taxpayer in good faith and further advised him against settling the litigation.

Taxpayer, however, decided to negotiate a settlement of the suit against him by the Land Bank, to avoid the danger of a deficiency judgment of over $11,000. The negotiations were orally consummated in August, 1933, the agreement being that taxpayer would pay the Land Bank $2,500 in settlement of the suit.

This was confirmed in a letter dated September 12, 1933, from the bank to the taxpayer, which provided that the taxpayer give three notes, one for $1,000 due October 15, 1933, and two notes for $750 each, payable October 15, 1934, and October 15, 1935.

Taxpayer paid the $1,000 note due October 15, 1933, several days before its maturity date.

At the time the settlement was effected, the Land Bank was still the owner of the property acquired under the deed of March 3, 1932.

The amount of loss claimed on the tax return for the fiscal year ending March 31, 1934, was $17,250. All but $1,000 of this was disallowed by the Commissioner. The amount in dispute was originally $16,250, but taxpayer now claims a loss of $27,500.-03. The $1,000 allowed by the Commissioner was the amount paid by the taxpayer during the fiscal year 1934 on the note given in settlement of the litigation.

The Board held that the foreclosure and sale in 1932 established the taxpayer's loss and affirmed the action of the Commissioner in disallowing all but $1,000 of the loss claimed for the fiscal year 1934.

The sole question presented is whether the loss, arising out of the transaction in question, resulted to the taxpayer in the year 1932, the year of the foreclosure, sale and deed of the property, or in the fiscal year 1934, when the litigation in connection with the property was compromised and finally settled.

The statute involved is Revenue Act of 1932, c. 209, 47 Stat. 169, 179 which reads as follows:

"Sec. 23. *Deductions From Gross Income.*

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

"(e) *Losses by Individuals.*—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *." 26 U.S.C.A. § 23(e) (1, 2).

It is contended on behalf of the petitioner that the loss could not be definitely ascertained and was not realized until the year 1934 when the litigation in connection with the sale under the deed of trust was finally settled; that until that time it was not certain that the petitioner would lose his interest in the property and suffer any loss.

It is contended on behalf of the respondent that the loss was realized when the property was sold under the foreclosure and the deed made and that any settlement of the litigation that resulted to the advantage of the petitioner would be a recovery that should be accounted for in the year in which the settlement was finally reached.

It cannot be controverted that the petitioner has suffered a loss in the transaction and we are of the opinion that the fact that there would be a loss and the amount of it could be in no way definitely ascertained until the litigation was finally settled. The litigation involved the validity of the sale itself and until it was determined whether the sale was to stand or the property or its equivalent would be recovered by the petitioner nothing concerning the transaction was settled.

In the suit brought by the respondent and in respondent's answer to the suit brought by the bank the question of the taxpayer's rights in the land or its value was in issue. It is apparent from the pleadings in both suits that there was a serious question as to the validity of the sale under the foreclosure. The final settlement of this litigation was the determinative event which fixed the time of the loss. The fact that in respondent's suit the temporary injunction was dissolved is of no significance.

"And where a bill in equity prays for other relief besides an injunction, it is error, when dissolving the temporary injunction on motion, to also dismiss the bill, when it states a case which would, if proved on the final hearing, entitle the complainant to the other relief prayed for; since the dissolution of the injunction does not deprive the complainant of the right to any other and further proceedings which may be necessary to obtain a final determination on the merits." 14 R.C.L. page 469.

It has been held in numerous cases that whenever a transaction between two parties gives rise to claims and counterclaims, and litigation ensues involving the rights and claims of both, neither party sustains a loss or realizes income from that transaction until the litigation is finally determined, or settled by agreement of the parties. Consolidated Tea Company v. Bowers, D. C., 19 F.2d 382; Ewing Thomas Converting Company v. McCaughn, 3 Cir., 43 F.2d 503.

The Board has held to the same effect in a number of cases. Russell Wheel & Foundry Co. v. Com'r, 3 B. T. A. 1168; Manville Jenckes Co. v. Com'r, 4 B. T. A. 765; Pacific Novelty Co. v. Com'r, 5 B. T. A. 1017; Peninsula Shipbuilding Co. v. Com'r, 9 B. T. A. 189; Arabol Manufacturing Co. v. Com'r, 26 B. T. A. 1068.

"These two decisions represent both sides of the question. In the former, a claim which was unsuccessfully resisted was held to be a loss of the year in which the judgment was entered against the taxpayer. In the latter case, the same rule was applied to a claim prosecuted by the taxpayer to an unsuccessful conclusion. I am aware of no decisions in which judgment on a litigated claim has, for taxation purposes, been referred back to the date when liability accrued or the claim arose. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, and American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946, which are relied on by the plaintiff, seem to me quite distinguishable. In neither was there any disputed claim or any litigation." John R. Lankenau Co. v. United States, D. C., 46 F.2d 158, 159.

As long as the two law suits were pending the taxpayer's legal rights in the land or its value were unsettled and unknown and the ultimate loss, if any, was contingent and could not be deducted. The Commissioner would have rightly refused a deduction before the loss was definitely ascertained.

The fact that the litigation was pending would have the same effect as would the fact that there was a period in which the right of redemption under a foreclosure sale could be exercised.

The case of Niagara Share Corporation v. Commissioner, 4 Cir., 82 F.2d 208, relied on by the respondent, is distinguishable

from the instant case as to the facts. There the loss became fixed and definite in a certain year; that which was uncertain was the amount that would be recovered under a guarantee against loss and in that case we held that the loss should be taken in the year suffered and the recovery, if any, accounted for in the year when recovery was had. Here the loss was not ascertained until the year the litigation was ended. Other cases relied upon on behalf of the respondent involved this same principle and are not controlling here.

There is not sufficient evidence in the record to ascertain with any degree of certainty the exact amount of the loss suffered by the petitioner in the year in which the litigation was settled.

The effect of the litigation was to postpone the fixing of the loss until the year in which the settlement was made.

The decision of the Board of Tax Appeals is reversed and the case referred back to the Board for a finding as to the amount of the loss suffered by the petitioner in the fiscal year 1934.

Reversed and remanded.