THEODORE A. GRANGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
GRANGER v. COMMISSIONER
Docket No. 9509-74.
United States Tax Court
T.C. Memo 1978-474; 1978 Tax Ct. Memo LEXIS 39; 37 T.C.M. (CCH) 1849-20; November 28, 1978, Filed *39 Petitioner suffered losses on foreclosure sales of certain properties held subject to mortgage. Petitioner remained liable on the deficiencies in the mortgage obligations and in 1965 paid in full the remaining amounts owed. Held, because petitioner did not prove that the proceeds of the loan for which he undertook the mortgage obligation were used in the acquisition or improvement of the mortgaged property, no deduction is allowed. Held,further, amounts specifically designated as interest as part of a judgment must be considered as such. Held,further, petitioner has failed to show he suffered any loss on a foreclosure sale in 1967. Held,further, repayment of a loan incurred in 1959 for business expenses, secured by a mortgage, which was repaid in 1972 is not deductible in year of repayment. Charles R. Engle, for the petitioner. Ruud L. DuVall, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Year
Amount
1969
$ 3,266.43
1970
4,012.43
1971
3,966.02
1972
2,109.01
The issues to be decided are: [1] (1) whether petitioner is entitled to a loss deduction in 1965 for the payment in that *40 year of deficiency judgments outstanding against him from foreclosure sales in 1961; (2) whether certain amounts awarded petitioner in a civil suit for destruction of a building and designated as interest from the time of loss should be treated as interest income for tax purposes or as a reduction in basis in determining the uncompensated loss (if any) on the destruction of the building; (3) whether petitioner sustained a loss in 1967 on the foreclosure sale of a plant site and improvements. Resolution of this issue depends solely upon whether petitioner's basis in the property foreclosed exceeded the proceeds from the sale; and (4) whether petitioner is entitled to deduct, as an ordinary and necessary business expense, principal payments made in 1972 on a second mortgage on his personal residence which was undertaken to obtain funds used in 1959 in petitioner's business. FINDINGS OF FACTS Some of the facts have been stipulated. *41 The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Theodore A. Granger (hereafter sometimes Granger), filed his Federal income tax returns, using the cash basis method of accounting for the taxable years in issue, at the Internal Revenue Service Center in Philadelphia, Pennsylvania, except when instructed otherwise by the Commissioner. At the time his petition herein was filed, Granger resided in Arlington, Virginia. During 1959 and 1960, Granger was engaged in the home construction business. In 1959, Granger decided to build a research laboratory in Henderson, North Carolina with a group of scientists. The plan called for Granger to build a research laboratory and factory, of which he was to be the sole owner during construction, and then to sell it to a corporation to be set up at a later date. On March 24, 1959, Granger purchased, for between $5,500 and $6,000, the property on which the facilities were to be built, and thereafter construction was begun. However, in February 1960, the unfinished building was destroyed by wind. The building was insured during its construction for $190,000 by six contributing *42 insurance companies based upon its projected value when completed. The building was also encumbered by a $50,000 deed of trust obtained through Citizens Bank and Trust Company (hereafter the Bank). Due to reasons unstated in the record, the insurance companies refused to pay Granger upon the building's destruction. [2] Subsequently, Granger brought suit in federal district court against the insurors for $160,863, the amount he estimated would be necessary to rebuild the destroyed structure to its former level. Granger also claimed a casualty loss deduction on his 1960 income tax return in the amount of $160,863 for damage to the buildings. This loss was disallowed by respondent in a statutory notice of deficiency dated January 5, 1967. In response, Granger filed a petition with this Court. In Granger v. Commissioner,T.C. Memo. 1970-155, we upheld respondent's determination upon finding that there was a reasonable prospect of recovery of a claim of reimbursement.
After the building's destruction, Granger did not expend any additional amounts for construction on the property. Wreckage of the destroyed building *43 remained undisturbed. In June 1965, Granger received gross insurance proceeds of $128,443.34 awarded by the court with respect to his claims against the insurance companies. Of this amount, $95,000 was designated as proceeds for damage to the building, $4,000 was designated as reimbursement for expenses incurred in clearing of debris, and $29,443.34 was designated as interest (computed at six percent from June 27, 1960). Granger never reported the $29,443.34 as income on his 1965 return. In 1959, Granger borrowed $13,000 from the Bank to build a house on vacant lot number 23, Westover (White Oak) Drive (hereafter Job 23) and $25,000 to build a house on West End Drive (hereafter Job 315). Both loans were secured by deeds of trust. The lot costs for Job 23 and Job 315 were $2,000 and $5,000, respectively. Granger began construction of the houses but was unable to make payments on the loans. Therefore, on December 30, 1961, the Bank foreclosed and sold the properties. At that time, Granger still owed the Bank $14,089.83 on Job 23 (including interest) and $27,712.50 on Job 315 (including interest). The foreclosure sales resulted in proceeds of $1,409.96 on Job 23, leaving a balance *44 due of $12,680.37 [3] after the foreclosure sale, and proceeds of $4,377.22 on Job 315, leaving a balance due of $23,335.28 after the foreclosure sale. Granger did not claim any loss on his 1961 return as a result of these foreclosures. [4]
*45 By agreement dated June 7, 1965, Granger and his wife agreed to pay the Bank the full $128,443.34 insurance recovery for the release of certain indebtedness including the $50,000 mortgage loan on the destroyed building, the $12,680.37 remaining due on Job 23, and the $23,335.28 remaining due on Job 315. Upon payment, Granger deducted on his 1965 tax return the $36,015.65 combined balance of the mortgage loans on Job 23 and Job 315. This resulted in a net operating loss for that year, which he carried forward to the taxable years 1969 and 1970. The release agreement with the Bank further provided that the Bank would be entitled only to any net proceeds of the foreclosure sale on the laboratory site in excess of $7,000. The Bank had apparently foreclosed on the laboratory site prior to signing the agreement but the foreclosure sale had not yet been held. The property was put up for sale immediately and a bid was received July 7, 1965. The property was finally sold on January 13, 1967, for $6,414.60. On December 14, 1959, Granger borrowed $10,000 from the Bank secured by a second mortgage on his personal residence to pay bills incurred in his construction business. On April 28, *46 1972, he borrowed an additional $20,500 which he used to pay off the $901.73 remaining due on the first mortgage on his home and the full amount due on the second mortgage note ($13,448.73, including accrued interest). This $13,448.73 payment was deducted by Granger on his 1972 return as a business expense related to his defunct 1959-1960 construction business. Respondent disallowed a deduction for $10,000 of the $13,448.73 payment as representing repayment of loan principal. OPINION Deficiency Judgments
After the loss in 1961 through the foreclosure sales of the properties on which Job 23 and Job 315 were started, petitioner remained liable on the mortgage obligations he assumed. In 1965, he paid the full deficiency in respect of these obligations. Respondent agrees with petitioner that where a mortgagor is compelled to pay a deficiency and the mortgage debt was part of the mortgagor's cost of acquiring the foreclosed property, the deficiency paid by the mortgagor is treated as an additional loss arising from the foreclosure sale rather than as a loss arising from a separate and subsequent transaction; in such cases, the loss attributable to the deficiency is deductible under section 165 *47 [5] by a cash method taxpayer in the year the deficiency is paid. [6] *48 Morton v. Commissioner, 104 F.2d 534 (4th Cir. 1939); Black v. Commissioner, 45 B.T.A. 204 (1941); Diamond v. Commissioner, 43 B.T.A. 809 (1941). Respondent argues, however, that in this case the mortgage debt was not part of the purchase (or construction) cost of the foreclosed property, and, therefore, petitioner is not entitled to any loss deduction in 1965. Petitioner apparently does not disagree with respondent's statement of the law but contends he used all of the loan proceeds toward construction of the houses on those lots. [7] *49 We note initially that the foreclosure sale resulted in proceeds of $1,409.96 on Job 23 and $4,377.22 on Job 315 and the actual cost of the land to Granger was $2,000 on Job 23 and $5,000 on Job 315. Yet, if we were to assume Granger spent the entire proceeds of the loans on the two lots the cost basis in the properties would be at least $13,000 on Job 23 and $25,000 on Job 315. Although we are aware that forced sales often do not bring full fair market value, we believe that in the absence of any other evidence, the price at which an actual sale took place must be given considerable weight. See Kaplan v. Commissioner, 43 T.C. 663 (1965); Van Kannel Revolving Door Co. v. Commissioner, 11 B.T.A. 1209 (1928), affd. 36 F.2d 1022 (2d Cir. 1930); Stollwerck Chocolate Co. v. Commissioner, 4 B.T.A. 467 (1926); The Hotel DeFrance Co. v. Commissioner, 1 B.T.A. 28 (1924). Cf. also sec. 1.166-6, Income Tax Regs. We also realize that the total amount expended with respect to a property may exceed the resulting fair market value, so that a sale at a market price below the alleged basis does not necessarily *50 establish the incorrectness of such basis. However, in this case, because the foreclosure sale prices were so far below what would have been the minimum cost bases had petitioner actually expended all of the loan proceeds in the respective jobs, such sale prices are persuasive evidence that the loan proceeds were not so expended. Petitioner relies entirely upon his own testimony (and that of his wife) to support his claim that the entire loan proceeds were spent on construction of the houses. Petitioner offered no documentary evidence as to any item of cost relating to the construction and his conclusory statements and unsubstantiated estimates of basis cannot satisfy his burden of proof, especially in light of the foreclosure sale, at least in the absence of additional corroborative evidence or adequate explanation of why records were not kept or produced. Petitioner relies on Estate of Levine v. Commissioner, T.C. Memo. 1968-54, to support his contention that such testimony is sufficient. We disagree with petitioner's reading of that case, however, and it is clearly distinguishable. Accordingly, we hold that petitioner is not entitled to a deduction for his payment of the foreclosure *51 deficiency with respect to the loans for construction of Job 23 and Job 315. Interest on Insurance Proceeds
Petitioner maintains that because the judgment awarded him by the court did not fully compensate him for his actual loss from the destruction of the laboratory building, that portion of the judgment designated as interest should not be treated as interest for tax purposes. However, even if petitioner could show that the award was less than the basis of the property destroyed, [8]where a court specifically designates part of a judgment as interest to cover the cost to the taxpayer of foregoing the use of money due him until payment is made, we see no reason why it should not be considered as such for tax purposes. Cf. O'Brien v. Commissioner,22 T.C. 661 (1954). Therefore, we hold that that amount designated as interest in the award to petitioner by the federal district court is taxable as interest to petitioner. Loss on Sale of Destroyed Plant
Petitioner contends he sustained a $34,000 *52 loss from the foreclosure sale in 1967 of the destroyed laboratory and plant site. Resolution of this issue depends entirely on whether the salvage value of the plaint immediately after its destruction and the basis in the land and other separate improvements exceeded the $6,414.60 proceeds received from the sale. [9] The plant was destroyed in 1961, but due to the possibility of insurance recovery, *53 the loss, if any, was properly deductible in 1965, the year of recovery. Respondent contends that the full basis in the plant was less than the $99,000 insurance recovery, and therefore, petitioner has no remaining basis except for $5,500 to $6,000 in the land. However, this is not correct. Regardless of the correct amount of petitioner's basis prior to the insurance recovery, and whether such recovery resulted in a gain or a loss in 1965, after such recovery petitioner retained a basis in the salvage of the plant equal to the salvage value at the time of the casualty loss. [10] *54 This is so because the deductible amount of loss in 1965 would be the adjusted basis of the property, less any salvage value and insurance received. Therefore, petitioner was never compensated by the insurance recovery (at least for tax purposes) for either the salvage value of the plant or for the land, both of which "retain" their basis. Thus, to the extent that petitioner can show a salvage value, including land cost, in excess of $6,414.60, he is entitled to a loss deduction. Respondent concedes that petitioner paid between $5,500 and $6,000 for the land. Petitioner relies mainly on his and his wife's uncorroborated testimony that the value of the site, on-site improvements, and salvageable materials at the time of sale was approximately $34,000. Specifically, petitioner testified that he spent $3,000 installing waterline facilities which remained suitable for use after the building's destruction; $8,000 for on-site improvements, consisting of grading, drainage, roadways, preparation for parking areas; and the remaining portions of the building were worth $17,000. Respondent contends that the $6,414.60 received on the foreclosure sale is the best evidence of the value, and therefore, the basis of the property (at the time of sale); since the land was originally purchased for between $5,500 and $6,000, not significantly less than the foreclosure sale price, any remaining value of the improvements appears to have been negligible. For those reasons which we noted earlier in determining the fair market value of Job 23 and Job 315, we find such evidence persuasive of salvage value of the site at the time of sale in the absence of any additional evidence beyond Granger's *55 (and his wife's) uncorroborated testimony. Because there is no evidence to suggest that the salvage value was lower at the time of sale than at the time of loss, we believe the salvage value (including the value of the land) was not greater than the amount realized on the sale. Accordingly, we sustain respondent's disallowance of petitioner's claimed loss from the 1967 foreclosure sale of the laboratory plant site. Principal Payments on Mortgage
In 1959, Granger obtained a $10,000 loan secured by a second mortgage on his home to pay certain business expenses due that year. Repayment of $13,448.73, including interest, was made in 1972 and Granger seeks to deduct this entire amount under section 162 as a business expense. Respondent allowed a deduction of $3,448.73 for interest but disallowed any deduction for the $10,000 principal. Even if the borrowed $10,000 had been used for expenses properly deductible under section 162 (rather than capital expenditures), petitioner as a cash basis taxpayer should have deducted that amount in 1959, the year expenses were paid, not in the year of repayment Keenan v. Commissioner,20 B.T.A. 498 (1930). Accordingly, respondent's disallowance *56 of the deduction for the principal repayment must be sustained. Decision will be entered for the respondent.
Footnotes
1. Deductions claimed for expenses and losses which are the subject of the first three issues resulted in net operating loss carryovers to the years in issue. Resolution of these issues in favor of respondent reduces the amount of carryovers deductible by petitioner.↩
2. But see Granger v. Aetna Insurance Co.,344 F.2d 942↩ (4th Cir. 1965).
3. The proper balance due after foreclosure should be $12,679.87. However, the $12,680.37 figure was used by the Bank on its balance sheet to determine the amount owed. ↩
4. Upon audit of Granger's 1961 return, respondent issued a statutory notice, dated January 5, 1967, allowing losses on the foreclosures as follows: Job 23 Foreclosure Proceeds: Gain
Date
Company
Item
Paid
Payable
or Loss
2-23-59
Westover Terrace, Inc.
Lot 23
$ 2,000.00
$ 1,500.00
10-29-59
Greystone Septic
102.39 Concrete
Tank
1959
Henderson Bldg. Supply
Materials
17.49
1959
W. Durham Lumber Co.
Lumber
40.90
Labor - Exhibit
$ 160.00
F.I.C.A. Tax
4.00
$ 164.00
$ 2,160.78
$ 2,324.78
$ (824.78)
Job 315
Foreclosure Proceeds: ↩
Gain Date
Company
Item
Paid
Payable or Loss
8-25-59
R. J. Parham
Lot 25
$ 5,000.00
8- 3-59
Home Bldg. Supply $ 40.90
$ 4,500.00
10- 6-59
Greystone Concrete
Blocks
682.12
M. E. Whitmore, Inc.
Grading
128.88
Borden Brick
584.86
Citizens Bank
Interest
125.00
Labor - Exhibit
340.00
F.I.C.A. Tax
8.50
$ 5,602.38
$ 1,307.88
$ 6,910.26
$ (2,410.26)
Total Foreclosure Loss Year 12-31-61
$ (3,235.04)
5. All statutory references are to the Internal Revenue Code of 1954, in effect during the years at issue. ↩
6. Granger petitioneed this Court for a redetermination of his tax deficiency for 1961, although he did not contest the amount allowed by respondent on those foreclosure sales. Petitioner did not claim any loss on his 1961 return for these foreclosures. Respondent allowed as a basis substantiated costs incurred or payable on the purchase of the lots and construction of the houses but did not allow the (absolute but unpaid) mortgage liability to be included in petitioner's basis for the purpose of determining the amount of loss sustained as the result of the mortgage foreclosure. Although we do not need to reach the issue of whether such treatment was proper (since the amount of loss in 1961 is not in issue here), quite clearly any costs actually incurred by Granger in construction should have been reflected in the basis allowed for determining loss in 1961. Respondent does not contend that petitioner is collaterally estopped from denying that the basis allowed in computing the loss in 1961 was erroneous, but argues that petitioner's failure to contest such computation supports respondent's contention that Granger did not incur the expenses claimed. Because we decide this issue for respondent on other grounds, we express no opinion on the merits of this argument. Cf. Commissioner v. Yates, 86 F.2d 748 (7th Cir. 1936); Berch v. United States, 54 F.Supp. 175↩ (Ct. Cl. 1944). 7. Although it does not appear that petitioner contends that the deficiency payments are deductible regardless of whether the proceeds were used for business purposes unrelated to petitioner's investment in the mortgaged property, to the extent they were used for unrelated business purposes, it is clear they are not deductible in the year of repayment. Diamond v. Commissioner, supra↩.
8. Both petitioner and respondent argued extensively at trial and on brief concerning the basis of the property. We need not reach this question, however, based upon our holding on this issue.↩
9. Petitioner apparently assumes the proceeds recovered on the foreclosure sale should not reduce his loss on the foreclosure. Under the terms of the release agreement signed by Granger and the Bank, however, Granger became entitled to receive the full proceeds of the foreclosure sale (since the net proceeds were less than $7,000). The transfer by a mortgagor of his equity in property for release of a liability is treated as a sale or exchange and taxability of the gain or loss is based upon the same principles which apply to sales or exchanges generally. See Helvering v. Hammel,311 U.S. 504 (1941); O'Dell & Sons Co. v. Commissioner,8 T.C. 1165 (1947), affd. 169 F.2d 247↩ (3d Cir. 1948). Thus, any amounts received on the sale would be considered an amount realized for purposes of section 1001.
10. It is clear that the basis in the plant before it was destroyed was greater than the salvage value after destruction.