## VIRGINIA IRON COAL & COKE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4362.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1938.

Preston B. Kavanagh, of Washington, D. C. (Lewis A. Nuckols, of Roanoke, Va., and Karl D. Loos, of Washington, D. C., on the brief), for petitioner.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving income and excess profits taxes assessed against the petitioner, the Virginia Iron Coal & Coke Company, a Virginia corporation, for the calendar year 1933, in the respective amounts of $51,178.95 and $4,229.42.

The opinion of the Board will be found in 37 B.T.A. 195. There was a dissenting opinion in which two members of the Board joined.

The facts were stipulated and may be summarized as follows:

The petitioner, the Virginia Iron Coal & Coke Company, is a Virginia corporation with its principal office at Roanoke, Virginia. It has several subsidiary corporations, and the income of the consolidated group was returned for Federal income tax purposes in consolidated returns for the years 1930 to 1933, inclusive. The books of account of the petitioner and its subsidiaries were kept and the tax returns made upon the basis of calendar years and upon the accrual method of accounting.

One of the petitioner's subsidiaries, the New York & Virginia Mining and Mineral Company of Virginia, hereinafter referred to as the New York & Virginia Company, owned approximately 6,500 acres of mineral rights and mineral lands in Carroll County, Virginia. On July 7, 1930, the petitioner entered into a written contract with the Texas Gulf Sulphur Company, hereinafter referred to as the Texas Company. The contract provided that the Texas Company had the right to purchase all of the stock of the New York & Virginia Com-

pany owned by the petitioner, or the mineral lands and rights owned by the New York & Virginia Company, for the sum of $3,750,000. The aforesaid lands and mineral rights were acquired by the New York & Virginia Company prior to March 1, 1913, and the cost and March 1, 1913 value thereof were in excess of $425,000.

The agreement of July 7, 1930, provided that the Texas Company could retain the option from year to year until 1935 by paying $300,000 on August 1, 1930, and $125,000 on the 1st day of August in each succeeding year up to and including August 1, 1934. The Texas Company could make the purchase at any time by paying the purchase price. All of such annual payments were to be credited as part of the purchase price in case the option was exercised. There was a provision for continuing the option beyond August 1, 1935, by the payment of $150,000 on the 1st day of August of each year, but those payments were not to be credited as part of the purchase price. The Texas Company was not obligated to make further payments in case it failed to exercise the option but in that case the petitioner had the right to retain all payments already made.

The first payment of $300,000 was received on or about August 1, 1930. A second payment of $125,000 was received on or about August 1, 1931. The contract was not carried out precisely in accordance with its terms. Several supplemental contracts were entered into in order to include additional lands to be acquired by advances from the Texas Company, and to provide for some changes in the payments to be made in order to continue the option. Advances of small amounts were made, additional lands were acquired, and deeds were placed in escrow.

The Texas Company failed to make the required payment of $125,000 on August 1, 1932, but thereafter, on September 21, 1932, a supplemental contract was entered into, which continued the option with some modifications or changes, and by this and other supplemental agreements, the last of which was entered into on August 1, 1933, the time for further payment was extended until February 1, 1934. No further payment was ever made. On December 26, 1933, the Texas Company notified the petitioner in writing that the option would not be exercised, no further continuance was desired, and repayment of advances made for the purchase of additional lands was de-

manded. Thereafter, as of December 31, 1933, the New York & Virginia Company entered on its books a total of $8,718.80 as being then owing by it to Texas. On January 22, 1934, the aforesaid sum of $8,718.80 was paid to Texas in full satisfaction of the demand made by Texas in its letter dated December 26, 1933. The amounts expended by the Texas Company, namely $300,000 and $125,000, and the amounts advanced for acquiring other lands were charged upon the books of the company to an account designated "Land and Development." On or about December 28, 1933, the total amount shown in the aforesaid account "Land and Development" was charged off the books of the company as a total loss.

The sums of $300,000 and $125,000 received by the New York & Virginia Company in the years 1930 and 1931, respectively, were entered upon its books of account under the heading "Income from Options," but such amounts were not included in petitioner's income tax returns for such years.

Petitioner's income tax return for the year 1933 was filed with the Collector of Internal Revenue for the District of Virginia on May 10, 1934. On the same date the petitioner filed amended income tax returns for the years 1930 and 1931, and included therein, as taxable income, the aforesaid sums of $300,000 for 1930 and $125,000 for 1931. The amended tax return for the year 1930 showed a total tax liability of $591.01, which was paid by the petitioner at the time the return was filed. An overassessment for the year 1930 in the same amount was scheduled by the Commissioner of Internal Revenue under date of August 12, 1936, but has not yet been refunded to the petitioner.

In determining the deficiencies involved in this proceeding, the Commissioner included in gross income for the calendar year 1933 the sums of $300,000 and $125,000 received as hereinbefore set forth, on the ground that the transaction was not completed for income tax purposes until the Texas Company, in 1933, surrendered its right under the option to buy the lands. The parties stipulated before the Board that if it was finally determined that the sums of $300,000 and $125,000 were properly included in petitioner's gross income for the year 1933, then the deficiencies were the amounts determined by the Commissioner, viz., $51,178.95 in income tax for the year 1933 and $4,229.42 in excess

profits tax for the same year, but if it was finally determined that the amounts should not be included in taxable income for the year 1933, an order of no deficiency should be entered.

The question involved is whether the amounts of $300,000 and $125,000 forfeited to the taxpayer under the option agreement, are taxable as income for the year 1933.

The statute involved is Revenue Act of 1932, c. 209, 47 Stat. 169, §§ 22, 41 and 42, 26 U.S.C.A. §§ 22, 41, 42.

It is contended on behalf of the petitioner that no tax liability was incurred in the year 1933 on account of the payments received in the years 1930 and 1931; that these payments were taxable as income in the years in which they were received, in which years they became the property of the taxpayer; that Federal income taxes are levied upon the basis of annual returns showing the net result of all the transactions of the taxpayer during a fixed accounting period; and that in no event could the payments in question constitute income for the year 1933.

The contention of the respondent is that the payments were taxable in the year 1933 when the option was terminated and when, for the first time, it became possible to determine whether they were to be forfeited to the taxpayer or were to decrease the amount to be paid as the final purchase price.

■ It is true that, when possible, the Federal income tax system is operated on a yearly basis. Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Burnet v. Sanford & Brooks Company, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Niagara Share Corporation of Maryland v. Commissioner, 4 Cir., 82 F.2d 208. A reading of the option discloses, however, that at the time the payments were made it was impossible to determine whether they were taxable or not. In the event the sale should be completed, the payments became return of capital, taxable only if a profit should be realized on the sale. Should the option be surrendered it would then become certain, for the first time, that the payments constituted taxable income. Thus it will be readily seen that it was impossible to tax these payments in the year in which they were made. This being true the yearly basis system could not be used. That the taxpayer realized this is shown by the fact that its tax return for the years in which the payments were received did not include these payments as taxable.

■ That, when it became possible to determine the character of the payments and to definitely ascertain that they were income to the taxpayer as payments for an option, they should be taxed, is not to be disputed. Nor should the determination of the year in which they should be taxed be left to the option of the taxpayer. The time for computing the tax for the year in which the payments were made had passed and might be barred by the statute of limitations. The taxpayer might not elect to file amended returns, as was done here, and the Government would be unable to collect any tax. Taxes, so necessary to the existence of the Government, may not be predicated upon a contingency. Brown v. Helvering, supra.

It is significant that the taxpayer's petition filed before the Board contained an allegation that the sale, if consummated, would result in a loss. The payments in that event would not be taxable.

The principle involved here was discussed by this court in Bourne v. Commissioner, 4 Cir., 62 F.2d 648, certiorari denied 290 U.S. 650, 54 S.Ct. 67, 78 L.Ed. 564, where we held that "the question of whether the payment was to be income or not could not be determined until the sale was completed" [page 649] and held the payments made in that case to be taxable income in the year in which the character of the payments was determined.

In Aiken v. Commissioner, 8 Cir., 35 F.2d 620, in discussing the character of a payment similar to the payments here, the court said [page 624]:

"The $50,000 paid during the year 1916, although a part of $1,250,000 that was finally paid, was not income merely because it was a payment, for the reason that, until the entire amount had been paid, the gain could not be computed."

In MacLaughlin v. Alliance Insurance Company, 286 U.S. 244, 52 S.Ct. 538, 76 L. Ed. 1083, the court said [page 539] "Realization of the gain is the event which calls into operation the taxing act, * *." See, also, Lucas v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

A number of authorities cited on behalf of the petitioner either deal with payments that were clearly marked as option payments only and therefore taxable income in the year in which received or are not in point or in accord with the weight of authority.

The year 1933 was the year in which the Texas Company notified the taxpayer that it surrendered all rights under the option and was the year in which the tax attached to the payments. The situation is in no way affected by the fact that the money became the property of the petitioner when received.

The decision of the Board of Tax Appeals is accordingly affirmed.

Affirmed.