JOURNAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96682. Promulgated May 13, 1941.

*Edmund B. Shea, Esq.,* and *Carl F. Mikkelson, Esq.,* for the petitioner.

*Jonas M. Smith, Esq.,* for the respondent.

OPINION.

TYSON: The first issue is whether the petitioner in computing its net income for the year 1936 may deduct the amount of $112,564.97 claimed by petitioner to have accrued against and have been paid by it as "interest * * * on indebtedness." That amount was paid together with the amount of $3,500 per share upon delivery to petitioner of the 650 shares of stock here involved on December 28, 1936, and is denominated in the offer of February 26, 1936, by petitioner to purchase such stock (which offer was accepted by the trustees on March 2, 1936) as interest at the rate of 6 percent per annum on the purchase price of the stock, for the period beginning March 2, 1936, and pending delivery of and payment for the stock. The deduction is claimed by petitioner under section 23 (b) of the Revenue Act of 1936 as "interest paid or accrued within the taxable year on indebtedness" of petitioner. The respondent denied the claimed deduction.

466

The Commissioner defends his denial of the claimed deduction of $112,564.97 on the ground that the petitioner was not indebted to the trustees prior to delivery of the stock on December 28, 1936. On the other hand, the petitioner contends (1) that on March 2, 1936, when the trustees accepted the offer to purchase the stock, it became so indebted because on that date, it further contends, it entered into an obligation to pay for the stock and that such obligation was an indebtedness unaffected by the conditions stated in the contract; and (2) that the determination of a court of competent jurisdiction of Wisconsin to the effect that the payment by petitioner of the $112,564.97 represented interest is an authoritative adjudication of that issue and, as such, is binding upon the Board.

The words "interest * * * on indebtedness" are understood in the business world to mean "compensation for the use or forbearance of money", and that is the meaning which is to be attributed to them in applying the statute here involved. *Deputy* v. *Du Pont*, 308 U. S. 488. The word "indebtedness" does not necessarily include every obligation. The term "interest" is limited in meaning to compensation for money borrowed or the forbearance of money legally owed and the obligation to pay upon which the interest is based must be unconditional and legally enforceable. *Deputy* v. *Du Pont, supra; Autenreith* v. *Commissioner*, 115 Fed. (2d) 856; *Commissioner* v. *Park*, 113 Fed. (2d) 352; *Johnson* v. *Commissioner*, 108 Fed. (2d) 104; *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, affirming 18 B. T. A. 1277.

As was said by this Board in *W. S. Gilman*, 18 B. T. A. 1277, "A debt is understood to be an unconditional promise to pay a fixed sum, at some specific time, and is quite different from a contract to be performed in the future, depending upon a condition precedent which may never be performed." The Circuit Court, on appeal of the *Gilman* case, *Gilman* v. *Commissioner, supra*, in its consideration of what constituted a debt, cited many authorities as establishing the principle which the court quoted with approval from the text of 17 C. J. 1377, as follows: "Every debt must be solvendum in praesenti, or solvendum in futuro—must be certain and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a 'debt'. While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term 'debt' being opposed to 'liability' when used in the sense of an inchoate or contingent debt."

The stock here involved, which was the subject matter of the contract, was not available for sale or delivery when the offer and acceptance were executed, and both parties then contemplated that to make it so available steps would necessarily have to be taken to secure authorization by the court for the release of the stock by the administrators

to the trustees and approval of the sale of the stock by the trustees. The acceptance was expressly "conditioned on and to become effective only on * * * transfer of such stock to * * * the trustees by the administrators * * * and * * * judicial authorization and approval of such sale" and the offer stipulated that acceptance might be predicated upon such conditions. It is to be noted also that the contract to sell the stock to petitioner and Faye McBeath embraced the further condition that, if Harry J. Grant should by reason of death or incapacity not remain as directing head of the Journal Co. on the date of the delivery of the stock, the contract should be rescinded.

Although the offer and acceptance resulted in a contract obligation, there arose on the date of the acceptance of the offer no present definite, unconditional, and legally enforceable obligation for the payment by petitioner of money as the purchase price of the stock. The present definite obligation to pay such purchase price arose only upon the consummation of the sale by delivery of the stock. The fixing of a future date for the actual consummation of the sale precludes any tenable contention that there was, prior to that date, an existing indebtedness fixed by the offer and acceptance to pay a purchase price upon which interest could accrue in the interim.

The parties described the payments as interest on the agreed purchase price of $3,500 per share from the time of the acceptance of the offer until the approval of the sale by the court, but that fact can be of no controlling significance here, where, at the time of the acceptance of the offer, no debt became presently and definitely payable to the seller upon which interest could accrue. As the court said in *Autenreith* v. *Commissioner, supra*, "The fact that these payments are described by the parties as interest and are fixed at six per cent per annum * * * cannot render them deductible for income tax purposes when it is clear that they have not been paid on an indebtedness within the meaning of the revenue acts."

The evidence herein discloses that in their accounts rendered to the County Court of Milwaukee County, Wisconsin, the trustees treated the $112,564.97 as interest received rather than as corpus of the trust and that the decree of that court approving the account and discharging the trustees recites that the trustees properly treated it as interest on an "obligation" and as income for the purpose of computing commissions of the trustees and the income distributable to the beneficiaries.

The petitioner contends that the above mentioned decree is an authoritative adjudication by the state court of the right of the beneficiaries under the state law to the money as interest on an "obligation" and is controlling here in determining whether or not it was "interest * * * on indebtedness" under section 23 (b), *supra*.

In our opinion the decree of the County Court of Milwaukee County, Wisconsin, in deciding that by the law of that state the amount here in question was income distributable to the beneficiaries as interest on an "obligation" and was income for the purpose of computing commissions for the trustees in no sense controls the determination of whether or not such amount is interest on indebtedness within the scope of section 23 (b), *supra*. Cf. *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; *Burnet* v. *Harmel*, 287 U. S. 103; *Lyeth* v. *Hoey*, 305 U. S. 188; *Morgan* v. *Commissioner*, 309 U. S. 78; *United States* v. *Pelzer*, 312 U. S. 399; and *Commissioner* v. *Carey-Reed Co.*, 101 Fed. (2d) 602. What here constitutes interest on indebtedness under the Federal statute, section 23 (b), *supra*, is no more to be controlled by the characterization of a state court of Wisconsin than is the characterization by state courts of what constitutes a partnership as distinguished from an "association" under section 1, Revenue Act of 1918, *Burk-Waggoner Oil Ass'n.* v. *Hopkins*, *supra*; or what constitutes an "inheritance" under section 22 (b) (3), Revenue Act of 1932, *Lyeth* v. *Hoey*, *supra*; or of what constitutes "interest upon * * * the obligations of a State * * * or any political subdivision thereof" under section 22 (b) (4), Revenue Act of 1932; *Commissioner* v. *Carey-Reed Co.*, *supra*.

But even if the decree of the County Court of Milwaukee County approving the account of the trustees would otherwise be controlling as to the $112,564.97 being interest accrued on indebtedness within the provisions of section 23 (b), *supra*, it nevertheless does not have that effect, for the reason that the decree was entered in uncontested proceedings. *First-Mechanics National Bank of Trenton et al., Executors*, 40 B. T. A. 876; affd., 117 Fed. (2d) 127, and authorities cited in both. There was no occasion for a contest in the county court between the beneficiaries of the trust as to what would constitute corpus as distinguished from income, since the income, embracing the interest here in controversy, was to be distributed to the beneficiaries in the identical proportions in which the corpus was to be distributed.

Petitioner, in support of its contention that the decree of the County Court of Milwaukee County approving the account of the trustees is controlling here as to the $112,564.97 being interest on indebtedness under section 23 (b), *supra*, relies upon *Freuler* v. *Helvering*, 291 U. S. 35. We do not think that case is controlling here. There, the facts show that a state court decided contested litigation involving the rights of remaindermen in the corpus as distinguished from the rights of beneficiaries in the income and, in so deciding,

"heard the merits and on that basis determined and settled property rights. * * * The state court considered and thereupon determined what was corpus and what was distributable as income." *First-Mechanics National Bank of Trenton* v. *Commissioner*, 117 Fed. (2d) 127, 130.

For the reasons stated we hold that the amount of $112,564.97 here involved was not paid or accrued as interest on indebtedness of petitioner and that it is consequently not deductible under section 23 (b), *supra*.

The second and final issue is whether the petitioner in computing its net income for the year 1936 may deduct $5,000 of the amount of $10,000 paid to attorneys as a retainer fee on June 3, 1937. The retainer fee covered general legal advice and services in connection with the petitioner's publishing business and no question is raised as to the propriety of the deduction as an ordinary and necessary business expense. Cf. *E. C. Laster*, 43 B. T. A. 159.

The Commissioner contests allowance of the deduction on the ground that there is no proof that any liability was incurred by petitioner for such attorneys' fees during the year 1936.

It appears from the terms of the agreement that the contract covered a three-year period beginning July 1, 1936, and that the payment on June 3, 1937, of $10,000 covered the retainer fee for the first year of that term, the first half of which first year lay within the taxable year. The anual retainer agreed to be paid included such legal services as might be required in regard to all matters except litigation. The then office manager of the petitioner testified, without contradiction, that the petitioner required legal advice and services during the latter half of 1936 and we understand this to mean that services were actually required of and rendered by the firm of attorneys during the period July 1 to December 31, 1936, at the request of the petitioner. All the events which determined the liability of petitioner to pay for such services thus occurred in 1936 and only the amount thereof remained undetermined. *United States* v. *Anderson*, 269 U. S. 422; *Uncasville Mfg. Co.* v. *Commissioner*, 55 Fed. (2d) 893, certiorari denied, 286 U. S. 545; and *Highland Farms Corporation*, 42 B. T. A. 1314, 1323. Cf. *Floyd, Inc.*, 43 B. T. A. 101.

The agreement of August 4, 1937, was nothing more than a determination of the amount of the value of the services rendered by the attorneys on an annual basis. Since the retainer of $10,000 for the year beginning July 1, 1936, was to embrace services rendered during that annual period and services were rendered by the firm of attorneys during the one-half of that period lying within the taxable

year, and the amount of the retainer fee bore no special relation to the amount of services actually rendered, provided some services were rendered, we think that $5,000 of the $10,000 paid by petitioner to the firm of attorneys on June 3, 1937, should be allocated to the taxable year 1936 as a liability incurred by and accrued against petitioner during that year.

We hold that the petitioner is entitled to the claimed deduction of $5,000 in computing its net income for the year 1936.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

DISNEY, dissenting: I dissent. The contract of February 26, 1936, provided in effect that the petitioner was obligated to take and pay for the corporate stock provided the vendors on their part complied with the contract. The vendee became from February 26, 1936, entitled to benefit of the dividends upon the stock, for if any were paid prior to delivery of the stock the purchase price was to be reduced, and if none were paid prior to delivery of the stock the petitioner would, of course, thereafter receive the dividends. The petitioner thus appears as the equitable owner of the stock from the date of the contract and the only condition, it seems to me, was that the vendors should comply with their agreement to deliver. The petitioner was not obligated to pay the purchase price until delivery, but was obligated to do so upon delivery of the stock. It agreed to pay interest upon the purchase price from the date of the contract and I think that payment of interest so made properly comes within section 23 (b) of the Revenue Act of 1936 as made for delay in the payment of a purchase price, the benefits of which petitioner had from the date of the contract. The condition seems to me to be essentially not different from the usual condition implied in a contract, that is, compliance with the contract by the other contracting party. I do not think this is such a contingency as to negative the existence of a debt from the date of the contract, where the petitioner was obligated from that date and had the benefits of ownership of the stock from that date, subject only to fulfillment of the contract by the vendors, who upon such compliance could have compelled performance of the contract by the petitioner.

---

OPPER, dissenting: What seems to me to be the significant factor here is that whatever condition may have attached to the transaction in the beginning had disappeared before the taxable year came to an

end. Without suggesting that it would necessarily be otherwise if the significant events had been attributable to various years, on this record it can not be disputed that the entire transaction from inception to termination occurred between February 5 and December 28, all in the tax year 1936; so that when the sums were paid which petitioner seeks to have treated as interest, they were unconditionally interest and everybody concerned knew and recognized them to be such. It is difficult to understand why the Commissioner and the Board must disregard as inconsequential what every participant must have realized was of the essence: The fact, as my Brother Disney demonstrates, that when the transaction with which we are concerned was closed, petitioners had received income in the form of dividends and had paid out something which was nothing if it was not interest—a sum paid for the forbearance of money due. When it was paid, even the most scrupulous regard for the legal niceties could not conceal that there was an "indebtedness." At least when this is so clear, and while the tax liability for the very year under consideration remains in a fluid state, there seems less than an impelling urgency for so flagrant a disregard of actuality, *Rotorite Corporation* (C. C. A., 7th Cir.), 117 Fed. (2d) 245.