## JOURNAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7819.

Circuit Court of Appeals, Seventh Circuit.

Jan. 26, 1942.

Edmund B. Shea and C. F. Mikkelson, both of Milwaukee, Wis., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, and Lee A. Jackson, Sp. Assts. to Atty. Gen., and J. E. Garvey and J. P. Wenchel, Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Petitioner is a Wisconsin corporation against whom respondent assessed a $40,940.28 deficiency tax for 1936. On an appeal to the Board of Tax Appeals, the assessment was sustained. 44 B.T.A. 460.

The controversy is over an item of $112,564.97, which was paid by petitioner in connection with petitioner's purchase of the late Mr. Nieman's stock in the Journal Company. The parties differ as to whether this payment was an interest payment, or a part of the purchase price.

Mr. Nieman died testate, owning a large block of valuable stock of the Journal Company. By his will, this stock was given to testamentary trustees, by him named, with plenary power to dispose of the same. Those trustees entered into a contract with petitioner, which contract was subsequently approved by the court, whereby 1,100 shares were sold to the Journal Company and Faye McBeath, the latter, a legatee named in the Nieman will. Six hundred and fifty shares of the stock were sold to the Journal Company, and four hundred and fifty to Faye McBeath. The agreed price was $3,500 per share.

The sale, the approval of its terms by the court, the transfer of the stock, the payment of the money and the distribution

of the same, all occurred in the same year, to-wit, 1936.

The will of Mr. Nieman provided:

"As soon as practicable, but within five years, (1) after the death of my wife, or (2) after my wife and niece may have directed, in writing, the trustee to sell said shares of stock, my said trustee shall sell said shares of stock in the Journal Company, and in making such sale shall not be bound to sell the same to the persons or corporation who may bid or be willing to offer the highest price, but may sell the same to such persons or corporation as in the judgment of such trustee or trustees will carry out the ideals and principles which I have always attempted to maintain and support during my lifetime in the conduct of the Milwaukee Journal.

"Said sale may be made in the discretion of said trustee or trustees for cash or credit or both, and upon such terms as the trustee or trustees may determine, and upon such sale the entire net proceeds of sale shall be held by said trustees, if such sale be made during the life of my wife, until the death of my wife, Agnes Wahl Nieman, and upon her death, or if such shares should not then be sold, upon the sale thereof, shall be paid or transferred one-half thereof to the heirs or personal representatives or assigns of my said wife, Agnes Wahl Nieman, and one-half thereof to my niece, Faye McBeath, or in case of her death to her heirs, personal representatives and assigns."

Provisions of the agreement for the purchase and sale of the stock, which are necessary to, or bear upon, the proper disposition of this case, are herewith set forth:

"(b) That the undersigned, The Journal Company, Harry J. Grant and Faye McBeath, will covenant and agree that, so far as it may lie within their power, a majority of the stock of the Journal Company shall not be transferred at any time except to such persons or corporation as will carry out the ideals and principles as stated in said will in the above quotations.

"(c) That a portion of the stock of The Journal Company will be made available within a reasonable time to employees of The Journal Company at a price not in excess of the price herein offered for said stock or in the event of any recapitalization of The Journal Company, the proportionate part thereof.

"(d) That due to the necessity of securing the approval by a competent court of the sale of the stock, the delivery thereof and the payment therefor may be considerably delayed after the date of action hereon by you; subsequent to March 1, 1936 and pending such delivery and payment, interest on the purchase price shall be paid by the purchasers at the rate of six per cent per annum and the price per share herein offered shall be reduced by the total amount of dividends per share, if any, which may hereafter be declared and paid upon the said stock."

Petitioner argues: (1) that interest paid or accrued within the taxable year on taxpayer's indebtedness may be deducted from income, § 23 (b), Revenue Act, 1936, 26 U.S.C.A. Int.Rev.Code, § 23(b); (b) "interest on indebtedness" has the same meaning in the Revenue Act that it has in ordinary business. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484. (c) The word "interest" has a well-defined connotation. It is compensation for the use of money arising out of obligations which may be contingent as well as absolute. Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Commissioner v. Tennessee Co., 3 Cir., 111 F.2d 678.

Our conclusion is that the parties were fully authorized to make a sale, and fix the purchase price of the six hundred and fifty shares which were sold to petitioner at $2,275,000. An offer, which was seven hundred and fifty dollars per share higher, had been previously made by a Mr. Annenberg, and rejected by the trustees. This, no doubt, accounts in part for the precautions taken to protect the trustees and to assure the purchaser of a more secure title.

Approval by the Wisconsin court having jurisdiction of the estate, was, therefore, a requirement included in the agreement. As this necessitated postponement of the transfer of the stock, provision was made for the payment of interest by the purchaser on the agreed purchase price and also for the allowance of dividends to the purchaser in case any dividend was declared before the stock was transferred.

The contract was a purchase and sale agreement. The purchase price was fixed. Provision was made against loss through delay, by the payment of interest.

Neither the strict language of the contract nor the surrounding factual circum-

stances, justifies us in holding what the parties called interest to be principal. The rate, the language, the purpose (compensation for the use of money) all indicate that the parties used the word discriminatively, advisedly and correctly.

The order of the Board of Tax Appeals is reversed.