Paul D. **DUNLAP** and Shirley A. Dunlap, Appellees,

Hawkeye Bancorporation, Appellee,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 81–1510.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1981.

Decided Feb. 9, 1982.

Rehearing Denied March 12, 1982.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Richard Farber, argued, Frank P. Cihlar, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellant.

Kent O. Littlejohn, argued of Baird, Holm, McEachen, Pedersen & Hamann, Omaha, Neb., for appellee.

Before GIBSON, Senior Circuit Judge, BRIGHT, Circuit Judge, and LARSON,* Senior District Judge.

BRIGHT, Circuit Judge.

This appeal by the Commissioner of Internal Revenue challenges a determination by the tax court that taxpayer Hawkeye

* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

Bancorporation (Hawkeye) [1] sustained a deductible loss of $35,000 in 1973 as a result of a lapsed option. The Commissioner disallowed the deduction on grounds that the option did not lapse because Hawkeye retained several consecutive one-year options exercisable in years subsequent to 1973. In proceedings in the tax court contesting the deficiencies in Hawkeye's 1973 federal income tax return, see 26 U.S.C. § 442, the tax court ruled that the option had lapsed and allowed the loss deduction. *Dunlap v. Commissioner*, 74 T.C. 1377, 1429–31 (1980). The Commissioner appeals. We reverse the decision of the tax court.

## I. *Background.*

The facts are not in dispute. On April 1, 1972, Hawkeye leased office space in the Stephens Building in Des Moines, Iowa, from Stephens Industries, Inc. On July 12 of the same year, Hawkeye contracted with Stephens Industries for a series of options to purchase the Stephens Building for $2,000,000. The contract called for an aggregate option price of $350,000, divided into ten separate and successive yearly options. Hawkeye paid $350,000 to Stephens Industries when they executed the option agreement. The agreement provided that if Hawkeye exercised the purchase option, it would receive a refund from Stephens Industries in an amount representing $35,000 for each unexpired option according to the following schedule:

| Option Number | Effective Date | Expiration Date | Base Price | Amount of Option Refunds |
|---|---|---|---|---|
| 1 | July 12, 1972 | July 11, 1973 | $2,000,000 | $315,000 |
| 2 | July 12, 1973 | July 11, 1974 | 2,000,000 | 280,000 |
| 3 | July 12, 1974 | July 11, 1975 | 2,000,000 | 245,000 |
| 4 | July 12, 1975 | July 11, 1976 | 2,000,000 | 210,000 |
| 5 | July 12, 1976 | July 11, 1977 | 2,000,000 | 175,000 |
| 6 | July 12, 1977 | July 11, 1978 | 2,000,000 | 140,000 |
| 7 | July 12, 1978 | July 11, 1979 | 2,000,000 | 105,000 |
| 8 | July 12, 1979 | July 11, 1980 | 2,000,000 | 70,000 |
| 9 | July 12, 1980 | July 11, 1981 | 2,000,000 | 35,000 |
| 10 | July 12, 1981 | July 11, 1982 | 2,000,000 | 0 |

Hawkeye, in effect, forfeits a $35,000 refund for each year it fails to exercise the option.

The Commissioner contends on appeal that Hawkeye incurred no loss in 1973 with respect to its option to purchase the Stephens Building because, in substance, the option agreement created a single ten-year option that could not lapse in 1973 or at any other time before the end of the ten-year period. Hawkeye asserts that it contracted for a series of ten consecutive one-year options to acquire the Stephens Building, and that the first option of the series lapsed during 1973, entitling Hawkeye to a loss deduction of $35,000.

## II. *Discussion.*

Section 1234 of the Internal Revenue Code provides that the loss attributable to the failure to exercise an option accrues when the option expires.[2]

The parties agree that Hawkeye may not claim a loss deduction until the option lapses because the character of the payment as ordinary loss or capital expenditures cannot

1. This case, Tax Court Petition 9438–77, was consolidated with five other related cases for purposes of trial, briefing, and opinion. After the tax court assessed $1,686 in tax deficiency against Hawkeye, the Commissioner appealed this and four other of the consolidated cases. The parties subsequently entered a stipulation dismissing the appeals in all but Petition 9438–77.

2. In 1973, § 1234(a) and (b) of the Internal Revenue Code provided as follows:
   (a) *Treatment of gain or loss.*
   Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which

has the same character as the property to which the option or privilege relates has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him).
   (b) *Special rule for loss attributable to failure to exercise option.*
   For purposes of subsection (a), if loss is attributable to failure to exercise a privilege or option, the privilege or option shall be deemed to have been sold or exchanged on the day it expired.
This section was amended by §§ 1402(b)(1)(U) and 2136(a), Pub.L.94–455, 90 Stat. 1732, 1929; effective for options granted after September 1, 1976.

be determined until that time. *Dunlap v. Commissioner, supra*, 74 T.C. at 1429 (1977).

In rejecting the Commissioner's disallowance of Hawkeye's $35,000 deduction for the expiration of the 1973 option, the tax court stated:

> Here, the option in issue, option number 1, expired on July 11, 1973. The cost of that option could not thereafter be refunded or credited in any way against the purchase price if one of the remaining options were later exercised. Thus, we do not have the classic situation where the character of the $35,000 payment cannot be determined in 1973, which necessitates postponement of recognition of gain or loss. See *Virginia Iron Coal & Coke Co. v. Commissioner*, 37 B.T.A. 195 (1938), affd. 99 F.2d 919 (4th Cir. 1938), cert. denied 307 U.S. 630 [59 S.Ct. 833, 83 L.Ed. 1513] (1939); *Koch v. Commissioner*, 67 T.C. 71 (1976). Accordingly, we hold that Hawkeye is entitled to deduct the loss on the $35,000 option which lapsed in 1973. [*Dunlap v. Commissioner, supra* at 1430–31 (footnote omitted).]

We reject that analysis. The option did not lapse because Hawkeye's right to purchase the building continued for ten years unless and until it exercised an option. Although Hawkeye would pay $35,000 more to purchase the building each year it failed to exercise an option, those payments, together with the base price of $2,000,000, would represent Hawkeye's cost of acquiring the building.

Inasmuch as the option to purchase the Stephens Building had not lapsed in 1973, but continued in virtue of the remaining successive yearly options, Hawkeye does not realize a deductible loss unless and until the option finally terminates at the end of the ten-year period. *See Virginia Iron Coal & Coke Co. v. Commissioner*, 37 B.T.A. 195, aff'd, 99 F.2d 919, 921 (4th Cir. 1938), cert. denied, 307 U.S. 630, 59 S.Ct. 833, 83 L.Ed. 1513 (1939); *Hicks v. Commissioner*, 37 T.C.M. (CCH) 1540, 1545 (1978).

Accordingly, we reverse and remand this case to the tax court.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I am in accord with the tax court's ruling that Hawkeye should be allowed to deduct the loss on the $35,000 option which lapsed in 1973. Therefore, I respectfully dissent.

The tax court, in that portion of its opinion quoted *ante* at 4, found that the $35,000 forfeited by the taxpayer Hawkeye as of July 11, 1973, when option number 1 lapsed, represented the amount paid for that lapsed option. The majority rejected that characterization of the transaction and found that "[a]lthough Hawkeye would pay $35,000 more to purchase the building each year it failed to exercise an option, those payments, together with the base price of $2,000,000, would represent Hawkeye's cost of acquiring the building." It seems to me that here the majority goes out of its way to find that the transaction in question is something other than what the parties unequivocally structured it to be.

The $35,000 at issue clearly does not solely represent part of the "cost of acquiring the building." Hawkeye did in fact purchase with that money the exclusive right either to buy or not to buy the Stephens Building during the period from July 12, 1972, until July 11, 1973. Whether Hawkeye ultimately buys the building or not, the right to do so during the period in question and Hawkeye's right to the $35,000 lapse. If Hawkeye never buys the building, it will have no "acquisition costs."

In addition, I agree with the tax court's finding that "[t]he contract itself is clear and unambiguous stating that Stephens Industries, Inc., the owner of the Stephens Building, granted Hawkeye 10 separate 1-year options valued at $35,000 per option." In my opinion, parties should be allowed the widest possible latitude in structuring bona fide business arrangements, as long as those arrangements are consistent with sound public policy. In the instant case, the net result to the public is essentially the same under the holdings of both the tax court and this court. Although the optionee is entitled to a deduction upon the lapse of an option, the optioner must at that time rec-

ognize the amount paid for the option as income. Therefore, I would accept that characterization of the transaction which was bargained for at arms-length by the parties and affirm the judgment of the tax court.