KINGSTOWNE L.P., WARREN E. AND MARTHA D. HALLE, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kingstowne L.P. v. Commissioner
Docket No. 1936-93
United States Tax Court
T.C. Memo 1994-630; 1994 Tax Ct. Memo LEXIS 646; 68 T.C.M. (CCH) 1497; December 21, 1994, Filed *646 Decision will be entered for respondent. For petitioners: Patrick G. Dooher. For respondent: David L. Click and Richard D. Fultz. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent issued a notice of final partnership administrative adjustment (FPAA) on August 28, 1992, determining adjustments to the 1985 partnership return of Kingstowne L.P. The sole issue for decision is whether the partnership may report as interest, pursuant to section 163, $ 900,000 that it paid to the sellers of Greendale Development Co. (Greendale) to extend the settlement date for the partnership's purchase of 100 percent of the stock of Greendale. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Warren E. Halle (Mr. Halle) and his wife, Martha D. Halle, are notice partners of Kingstowne L.P. (the partnership). At the time of the filing of the petition, the Halles resided in Potomac, Maryland, and *647 the partnership's principal place of business was Silver Spring, Maryland. Halle Enterprises, Inc. (Halle Enterprises), a land development and home construction business, was the tax matters partner of the partnership as well as its general partner. The principal place of business of Halle Enterprises at the time of the filing of the petition was Silver Spring, Maryland. Mr. Halle was president and sole shareholder of Halle Enterprises. In the summer of 1984, Mr. Halle learned about the existence of an approximately 1,100-acre land tract suitable for residential development located in Fairfax County, Virginia. The land tract was the principal asset of Greendale. During the summer and fall of 1984, Mr. Halle negotiated with the four shareholders of Greendale (the sellers) for the purchase of the land tract. Greendale had submitted an application to the Fairfax County Board of Supervisors to rezone the land tract to obtain increased development rights (density). In February 1985, Mr. Halle reached an agreement with the sellers to purchase from them 100 percent of the stock of Greendale. Mr. Halle formed Kingstowne L.P. as of March 8, 1985, for purposes of acquiring complete *648 ownership of the stock of Greendale. On March 8, 1985, the partnership and the sellers entered into a stock purchase agreement (purchase agreement) whereby the partnership would pay the sellers $ 29 million for their stock in Greendale. The partnership paid the sellers a $ 3 million downpayment on March 8, 1985. The downpayment consisted of $ 2 million in cash and a non-interest-bearing $ 1 million confessed judgment promissory note drawn by the partnership and the Halles. At the time the contract between the partnership and the sellers was executed, the land tract was in the final stages of a Fairfax County rezoning proceeding. The application for rezoning remained in the name of Greendale. Greendale incurred or was contractually committed to incur various legal, engineering, planning, and development costs (rezoning costs) in the course of pursuing its rezoning application. The purchase agreement obligated the partnership to pay all rezoning costs incurred after March 15, 1985. Pursuant to the purchase agreement, settlement was scheduled to occur on April 26, 1985. At settlement, the sellers were to deliver the stock certificates and the Greendale books and records to the *649 partnership and to tender their resignations as officers and directors. The purchase agreement entitled the partnership to defer settlement on a monthly basis until October 1, 1985, provided that the partnership was not in default under the purchase agreement and that the partnership had paid in advance the sum of $ 225,000 per month. The purchase agreement provided that the $ 225,000 monthly payment would be adjusted on a daily basis to reflect the actual settlement date but was otherwise nonrefundable. The $ 225,000 monthly payment approximated a return on the unpaid purchase price of 10 percent. The prime rate charged by banks during February 1985 was 10.5 percent, and the average rate on 6-month commercial paper issued during that month was 8.69 percent. The sellers were obligated under the purchase agreement to continue to operate the land tract in the normal and usual manner and to pursue the land tract rezoning until settlement. On June 17, 1985, Fairfax County approved the sellers' rezoning application for increased density on the 1,100-acre land tract. Pursuant to section 10 of the purchase agreement, in the event that the partnership failed to make settlement or to *650 pay a $ 225,000 advance monthly payment to extend the settlement date -- then the (i) Deposit and, if Buyer [the partnership] has elected to extend the Settlement Date, any monthly installment paid to Seller in consideration of the extension of settlement shall be forfeited to Seller as liquidated damages, and (ii) the parties shall have no further rights or liabilities one to the other hereunder. * * * [Emphasis added.]
By ordinance of the Fairfax County Board of Supervisors, county realty taxes for the 1985 tax year were due and payable in two equal installments on July 28 and December 5. Greendale paid the realty tax due with respect to all realty owned by Greendale for the period January 1 to June 30, 1985. Section 3 of the purchase agreement provided that, at settlement, real estate taxes would be adjusted to April 26, 1985. The purchase agreement required that the sellers withdraw any application for refinancing the land tract during the period that the purchase agreement was in effect. The sellers were also prohibited from mortgaging or encumbering the land tract. The sellers were prepared to go to settlement as of the original April 26, 1985, settlement *651 date. On April 26, 1985, the partnership was not prepared to pay the balance due under the purchase agreement. The partnership extended the settlement date to obtain financing by paying the sellers four payments of $ 225,000 to extend the settlement date to August 23, 1985. By letter dated May 9, 1985, the partnership applied to the Riggs National Bank of Washington, D.C., for an acquisition and development loan. In the letter, the partnership advised the bank that, pursuant to the purchase agreement with the sellers, Greendale had sold all of its issued and outstanding stock to the partnership. Prior to the August 23, 1985, settlement, the partnership obtained the following acquisition and development financing commitments: (i) A loan commitment dated July 15, 1985, from the Riggs National Bank of Washington, D.C., in the amount of $ 33 million; (ii) a loan commitment dated July 24, 1985, from Citizens Savings and Loan Association, Inc., of Silver Spring, Maryland, in the amount of $ 10 million; and (iii) a loan commitment dated August 6, 1985, from Washington Federal Savings and Loan Association of Washington, D.C., in the amount of $ 10 million. The loans with the Riggs National *652 Bank were contingent upon approval of the sellers' rezoning application by the Fairfax County Board of Supervisors. The partnership initiated negotiations to sell portions of the 1,100-acre land tract and to enter into joint ventures with respect to portions of the tract with other developers prior to the August 23, 1985, settlement date. Settlement occurred on August 23, 1985. The partnership used its loan proceeds to pay the sellers the $ 26 million balance of the purchase price for the stock of Greendale. The partnership also reimbursed Greendale for realty tax allocable to the land tract for the period April 26 to June 30, 1985, and paid realty tax allocable to the land tract for the period July 1 to December 31, 1985. After acquiring the stock of Greendale, the partnership immediately liquidated Greendale and acquired direct ownership of the land tract. The partnership mailed Forms 1099-MISC to each of the four sellers, reporting the $ 900,000 total monthly fees paid to extend the settlement date to August 23, 1985, as nonemployee compensation. The sellers objected to the issuance of the Forms 1099-MISC by the partnership. The sellers treated the fees as additional sales *653 proceeds paid for their stock. The partnership's first fiscal year ended September 30, 1985. It filed its return for such year treating the $ 900,000 monthly fees as deductible interest. Respondent sent to petitioners an FPAA disallowing the treatment of the $ 900,000 as interest. OPINION Section 163(a) provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Interest is compensation for the use or forbearance of money. Deputy v. Du Pont, 308 U.S. 488, 498 (1940). Section 163(a) generally dictates that four requirements be satisfied: (1) There is a genuine "indebtedness"; (2) the indebtedness is that of the taxpayer; (3) the payment is of "interest"; and (4) for cash method taxpayers, the interest is paid in the taxable year that the deduction is claimed. Midkiff v. Commissioner, 96 T.C. 724, 734 (1991), affd. sub nom. Noguchi v. Commissioner, 992 F.2d 226 (9th Cir. 1993). An "indebtedness" is "an existing, unconditional, and legally enforceable obligation for the payment of a principal sum." Id. at 734-735 *654 (citing Howlett v. Commissioner, 56 T.C. 951, 960 (1971)). Although an indebtedness is an obligation, an obligation is not necessarily an "indebtedness" within the meaning of section 163(a). Deputy v. Du Pont, supra at 497. Petitioners contend that the four payments that the partnership made to the sellers were deductible as interest under section 163(a). In petitioners' view, the $ 225,000 monthly payments compensated the sellers for the delay in their receipt of the unpaid purchase price balance. Petitioners maintain that the payments were designed to provide the sellers with a 10-percent return on the unpaid balance (on an annualized basis), which was consistent with short-term commercial interest rates in effect during 1985. Petitioners argue that the payments were made pursuant to an unconditional and legally binding contractual obligation to pay the balance of the purchase price to the sellers. Alternatively, petitioners contend that substantially all of the benefits and burdens of ownership of the land tract were transferred to the partnership as of the original settlement date, April 26, 1985. Accordingly, *655 petitioners maintain that the partnership should be treated as the owner of the property for Federal income tax purposes as of April 26, 1985, and that the partnership should be permitted to deduct the $ 900,000 as interest on indebtedness arising under an executed contract of sale. Respondent contends that the purchase agreement entered into by the partnership and the sellers on March 8, 1985, did not create a legally enforceable obligation. Respondent argues that, because the sellers had no legal right to compel the partnership to purchase the stock of Greendale, the unpaid balance was not an "indebtedness." The sellers' only recourse in the event of the partnership's default was to retain, as liquidated damages, the $ 3 million downpayment and any monthly payments already made by the partnership to extend settlement. Thus, in respondent's view, the partnership had in substance an option to purchase the sellers' stock beyond the originally scheduled settlement date by making the $ 225,000 monthly payments. The partnership had the ability to choose not to purchase the sellers' stock at any time until the date of settlement when the simultaneous exchange of the partnership's payment *656 and the sellers' stock took place. Respondent further contends that the purchase agreement did not pass the benefits and burdens of ownership of the property to the partnership as of the originally scheduled settlement date of April 26, 1985. The partnership was not entitled to deduct the $ 900,000 as interest on indebtedness arising under a contract of sale because, in respondent's view, no sale took place until August 23, 1985. Executory Contract as Indebtedness
The intent of the parties is relevant to the determination of whether an amount is to be treated as interest. Dunlap v. Commissioner, 74 T.C. 1377, 1421 (1980), revd. on another issue and remanded 670 F.2d 785 (8th Cir. 1982). In form, the monthly payments were not interest. Nowhere within the purchase agreement, the sole document creating the obligation for such payments, did the parties designate the monthly payments as interest. Even if the monthly payments were intended to compensate the sellers for the delay in their receipt of the purchase price, to be deductible as interest under section 163, the payments must have been made pursuant to an unconditional *657 and legally enforceable obligation. Midkiff v. Commissioner, supra at 734. If the payments were made in order to retain the partnership's option to complete or not complete the transaction, the partnership was not entitled to deduct the four monthly payments as interest pursuant to section 163. "An option to purchase property does not create an enforceable obligation to pay the purchase price." Estate of Franklin v. Commissioner, 64 T.C. 752, 762 (1975), affd. 544 F.2d 1045 (9th Cir. 1976). In Midkiff, we held that an amount paid incident to the taxpayers' purchase of a fee simple interest in residential real property in settlement of condemnation proceedings commenced under the Hawaii Land Reform Act of 1967, Haw. Rev. Stat. Ann. ch. 516 (Michie 1993 & Supp. 1994), was not interest. The obligation imposed on the taxpayers did not rise to the level of an indebtedness until the date of final settlement of the condemnation action. Midkiff v. Commissioner, supra at 744. Respondent contends that the partnership's obligation, like that of the taxpayers in *658 Midkiff, did not rise to the level of an indebtedness until final settlement. Petitioners argue that their situation is distinguishable from that of the taxpayers in Midkiff. In Midkiff, until the date of closing, the taxpayers' conditional obligation to purchase the leased fee ran to the governmental authority that brought the condemnation proceedings and not to the sellers. Petitioners contend that, in contrast, the partnership always had a direct obligation to pay the purchase price balance to the sellers. Petitioners also note that the taxpayers in Midkiff risked only a nominal amount by withdrawing from the condemnation proceeding. Petitioners maintain that the partnership risked a substantial forfeiture by withdrawing from the stock purchase sale prior to settlement. The analogy to Midkiff and the principles there stated apply here. Although the partnership would incur a substantial cost by not purchasing the sellers' stock, petitioners' situation was fundamentally the same as that in Midkiff because the partnership could not be compelled by the sellers to purchase their stock. As discussed further below, the partnership, not the sellers, had control *659 over whether the sale would take place up to the time of settlement. A value was placed on that control, which was functionally equivalent to paying for an option. In Kaempfer v. Commissioner, T.C. Memo. 1992-19, relied on by respondent, we found that the taxpayer was not entitled to deduct payments made to delay the closing for a real estate exchange transaction because there was no legally enforceable obligation to which the payments could attach. Petitioners contend that Kaempfer does not support respondent's position, because the case is distinguishable from the partnership's situation. In Kaempfer, the purchase price of the property increased over time. Petitioners argue that the partnership was obligated to pay a fixed sum to the sellers, the balance of the purchase price. Petitioners further note that the "interest" that the taxpayer in Kaempfer sought to deduct was not paid separately to the other party but rather was reflected as an adjustment to the value of the property to be acquired from the seller. These distinctions do not lead to the conclusion that the partnership was unconditionally obligated to purchase the sellers' *660 stock. Petitioners have not shown that the partnership had any obligation to pay the balance of the purchase price if it elected not to complete the transaction. The only remedial provision in the purchase agreement was section 10. Section 10(ii) provided that "the parties shall have no further rights or liabilities one to the other" in the event of the partnership's default other than for the sellers to keep the partnership's deposit and any monthly installment payments. The partnership's situation is identical to the taxpayer's arrangement in Kaempfer in one significant respect: the other party had no legally enforceable right against the taxpayer in the event of the taxpayer's default other than to retain liquidated damages. The presence of the liquidated damages provision in the purchase agreement is not conclusive as to whether the partnership's obligation to the sellers was an indebtedness or a mere option. In United States Freight Co. v. United States, 190 Ct. Cl. 725, 422 F.2d 887, 890 (1970), the taxpayer entered into a stock purchase contract that provided that he purchase the seller's stock at $ 30 per share within *661 the following month. The taxpayer was required to make a $ 500,000 downpayment, and the seller was entitled to retain the downpayment as liquidated damages if the taxpayer defaulted. Id. at 890. The taxpayer subsequently defaulted on the contract, and the seller retained the downpayment as liquidated damages. Id. at 891. The issue in United States Freight Co. was the characterization of the liquidated damages. The Commissioner contended that the taxpayer's $ 500,000 loss was due to the taxpayer's failure to exercise an option to purchase the seller's stock. Pursuant to section 1234(a), such a loss should have been characterized as a capital loss, not an ordinary loss. Id. at 894. The Court of Claims held that the taxpayer possessed a bilateral contract right, rather than an option to purchase the seller's stock. In holding for the taxpayer, the court stated: "The agreement * * * was not an option, * * * because it was not discretionary with the plaintiff under the agreement as to whether it would or would not elect to purchase the stock." Id. at 895. The court also noted that the inclusion of the liquidated damages provision in the purchase contract *662 did not serve to convert the contract into an option. Id. at 895. Petitioners argue that the partnership's purchase agreement is similar to that in United States Freight Co. because both contracts provided for settlement within a relatively short period of time and for substantial liquidated damages. Petitioners contend that, like the taxpayer in United States Freight Co., the partnership did not have merely an option, but an obligation, to purchase the sellers' stock. Petitioners' reliance on United States Freight Co. is misplaced. In that case, the Court of Claims was determining the character of liquidated damages, not the character of payments related to the deferment of settlement. In any event, the court there found a bilateral obligation that is lacking here. The absence of an obligation to pay is fatal to petitioners' claim. Petitioners contend that, even if the partnership's obligation to pay the sellers the purchase price balance was not unconditional prior to settlement, it still represented a sufficiently binding obligation to the partnership to warrant interest deductions by the partnership in delaying settlement. Petitioners rely on Journal Co. v. Commissioner, 125 F.2d 349 (7th Cir. 1942), *663 revg. 44 B.T.A. 460 (1941), and Dunlap v. Commissioner, supra, to support their contention. We distinguished these cases in Midkiff v. Commissioner, 96 T.C. at 737-741, and they are distinguishable here. In Journal Co. and Dunlap, we permitted the taxpayers to deduct as interest amounts that accrued from the date of a purchase agreement to the date of the delivery of the stock subject to the agreement. The agreements were binding contracts and the purchase prices were fixed as of the dates of the agreements. In Journal Co., the agreement provided that the sale was subject to the approval of a State probate court, which necessitated postponement of the stock transfer. In Dunlap, the agreement was subject to prior approval by the Board of Governors of the Federal Reserve System (FRS). Petitioners argue here that, if Fairfax County had failed to approve the sellers' rezoning application, the partnership would have been unable to obtain the financing necessary to pay the purchase price balance. In petitioners' view, settlement of the purchase agreement was therefore dependent *664 upon third-party approval. Petitioners further contend that their situation was more compelling than that of the taxpayers in Journal Co. or Dunlap, because the partnership would have suffered more severe financial penalties if it had not settled. Petitioners' situation is more similar to that in Midkiff than to the facts in Journal Co. and in Dunlap. Essentially, the partnership controlled whether or not it would be unconditionally obligated to pay the sellers the remaining purchase price. If Fairfax County had not approved rezoning, perhaps the partnership would have had difficulty paying the purchase price balance. Mr. Halle testified, however, that he believed that the partnership would have been able to obtain financing even without rezoning approval. Prior to the settlement, the partnership was free to decide not to settle for any reason or for no reason at all, albeit forfeiting its downpayment and all monthly payments that it had made to the sellers to extend settlement. We recognize that the partnership would have paid a substantial price for abandoning the project. This price, however, does not convert the partnership's obligation to the sellers *665 into an indebtedness within the meaning of section 163. As we stated in Kaempfer v. Commissioner, T.C. Memo. 1992-19: "Although it might have been an imprudent business decision for petitioner simply to walk away from the land transaction and forfeit his $ 90,000 deposit, that factor alone does not create a legally enforceable obligation for the payment of any amount." Petitioners also rely on respondent's regulations under section 1038 to argue that a sale giving rise to an indebtedness may occur upon the signing of an executory contract, like the purchase agreement between the partnership and the sellers. Although the regulations do provide an example where an indebtedness can arise under an executory contract for sale, the example is specific to section 1038. Sec. 1.1038-1(a)(2)(i), Income Tax Regs. Section 1038 is not applicable to petitioners' situation, because it governs the recognition of gain or loss when a seller of realty reacquires the same property in partial or full satisfaction of indebtedness on such realty. There may be some circumstances where an executory contract creates an unconditional obligation supporting an interest deduction. *666 The contract in question here does not. Benefits and Burdens of Ownership
In the alternative, petitioners contend that the partnership should be treated as the owner of the land tract as of the original April 26, 1985, settlement date, because it possessed substantially all of the benefits and burdens of ownership in the property by that date. As the beneficial owner of the property, petitioners maintain that the partnership was permitted to deduct the monthly payments to the sellers as interest on indebtedness arising under an executed sales contract. In petitioners' view, the partnership sustained several burdens of ownership. First, pursuant to the purchase agreement, the partnership paid the sellers $ 2 million in cash and delivered a $ 1 million confessed judgment note. Petitioners contend that the Supreme Court concluded in Frank Lyon Co. v. United States, 435 U.S. 561 (1978), that a 6-percent cash investment provided a sufficient level of ownership for Federal tax purposes. Id. at 580. Petitioners argue that the partnership's initial investment was sufficient for ownership determination purposes, because *667 the partnership made a cash investment of approximately 6.9 percent of the contract price and established an at-risk investment of more than 10 percent. Second, the purchase agreement required the partnership to pay all rezoning costs incurred by the sellers after March 15, 1985. Third, at settlement, the partnership was responsible for paying real property taxes on the property adjusted back to the original April 26, 1985, settlement date. Petitioners further contend that the partnership enjoyed several benefits of ownership associated with the property. The partnership benefited from any increase in the property's value above the $ 29 million contract price arising from market appreciation or from successful rezoning. Furthermore, the purchase agreement permitted the partnership to pursue financing for the purchase of the sellers' stock and for the development of the property. In contrast, the agreement expressly barred the sellers from seeking any land tract refinancing during the presettlement period and required the sellers to withdraw any refinancing application. Petitioners also note that, prior to settlement, the partnership initiated negotiations to sell portions of *668 the property and enter into joint ventures with respect to the property with other developers. Respondent argues that the record demonstrates that the benefits and burdens of property ownership did not pass to the partnership until August 23, 1985, the date of final settlement. The rezoning action before Fairfax County remained throughout the process and was finally issued in the name of Greendale, not the partnership. The partnership never notified Fairfax County that it had become the beneficial owner of the property. The purchase agreement required the partnership to reimburse the sellers for all engineering, planning, and development costs incurred after March 15, 1985, but Greendale retained primary liability for these costs. Greendale also remained liable on the mortgage it had on the Kingstowne tract until the date of final settlement. Although the partnership was responsible for paying county real estate taxes on the property for the period April 26 to December 31, 1985, nothing in the agreement required the partnership to pay these taxes in the event it did not settle. A taxpayer becomes the equitable owner of property when he assumes the "benefits and burdens" of *669 ownership. Baird v. Commissioner, 68 T.C. 115, 124 (1977). Whether the benefits and burdens of ownership have been transferred is an issue of fact to be decided according to the intentions of the contracting parties as disclosed by their agreements, which are examined in light of all of the facts and circumstances. Id.; Smoot v. Commissioner, T.C. Memo. 1991-268. The taxpayer bears the burden of proof in determining when the taxpayer assumed the "benefits and burdens" of ownership. Rule 142(a); Cregg v. Commissioner, T.C. Memo. 1983-146. Petitioners have failed to demonstrate that the partnership was the beneficial owner of the land tract prior to the date of final settlement. Petitioners' reliance on the holding of the Supreme Court in Frank Lyon Co. v. United States, supra, is unpersuasive. In Frank Lyon Co., Lyon obtained legal title of the building from a bank and leased it back to the bank for long-term use. Pursuant to the agreement, the bank paid Lyon monthly rentals equaling the mortgage payment amounts due on the building. Lyon paid *670 the bank $ 500,000, which represented approximately 6 percent of the total cost of the building. The Court addressed the issue of whether or not the sale-and-leaseback transaction had substance or was merely a financing arrangement. The Court concluded that a sale had occurred and that Lyon was the owner of the building for tax purposes. The Court reasoned that, not only did Lyon possess legal title to the building, it had committed its own capital to the building and, most importantly, was primarily liable on the mortgages taken out on the building. Id. at 576. The sellers' retention of primary liability for rezoning costs and mortgage debt is a significant burden of ownership. Although the partnership was responsible for reimbursing the sellers at settlement for any rezoning costs incurred after March 1985, and the partnership even paid some of these directly prior to settlement, the sellers remained primarily liable for any obligations associated with the property, including mortgage payments. Petitioners contend that, if retention of primary liability for debt were a significant burden of ownership, we would have been concerned in Professional Equities, Inc. v. Commissioner, 89 T.C. 165 (1987), *671 with whether or not a sale had occurred at all. In Professional Equities, Inc., the buyer and the seller had entered into an installment sale transaction involving a wraparound mortgage, not an option agreement. Only the amount of gain recognized by the seller was in dispute. The parties there agreed that a sale had occurred, and there was no reason for us to examine that issue. Prior to settlement, the partnership initiated negotiations with various developers with respect to the property, but, until it obtained the sellers' stock and liquidated the company, the partnership could not have finalized any of these development proposals. The partnership ultimately benefited from the approval of the sellers' rezoning application by Fairfax County, but only because the partnership proceeded to settlement. Although the partnership assumed the burdens of funding the rezoning process, if it had not settled, the sellers had no legal right to force the partnership to bear these costs. Based on the record as a whole, we conclude that the partnership was not the equitable owner of the Kingstowne property prior to the date of final settlement. The partnership is thus not entitled to *672 report the monthly payments made to the sellers as interest. Decision will be entered for respondent.